57 So.2d 112

MONTGOMERY BUILDING & CONSTRUCTION TRADES COUNCIL et al. v. LEDBETTER ERECTION CO., Inc.

3 Div. 600.

Supreme Court of Alabama.

June 28, 1951.

Rehearing Denied Jan. 10, 1952.

Further Rehearing Denied March 6, 1952.

John L. Busby and Earl McBee, Birmingham, for appellants.

Jack Crenshaw and Files Crenshaw, Montgomery, for appellee.

**FOSTER, Justice.**

The bill of complaint in this case was filed by appellee against appellants, labor organizations which are unincorporated associations, having their places of business in the city and county of Montgomery. The bill alleges in substance, and so far as here material, that Bear Brothers are general contractors and had entered into a contract with Montgomery Towers, Inc., for the construction of a large apartment house in the city of Montgomery in accordance with the plans and specifications. That the complainant entered into a contract with Bear Brothers whereby it agreed to erect and rivet all the structural steel necessary for the erection of said apartment house. The bill alleges that the employees of Bear Brothers are not organized as union labor, and there was not a labor dispute existing between the complainant and any of its employees; that the respondents were not representatives of employees of Bear Brothers, and did not seek to represent the employees of complainant. The bill then alleges that respondents were seeking to force Bear Brothers to recognize or bargain with a labor organization, and to that end respondents placed a picket line across the entrance to the property where the building was being constructed. That the union employees of complainant were not willing to cross that picket line to perform work on said building for the complainant, causing irreparable damage to complainant, and that respondents had declined to remove said picket line so that complainant's employees could continue to work on the job. It is also alleged in the bill:

"(12) That since the establishment of said picket line by the respondents none of the employees of the complainant Ledbetter Erection Company, Inc., will cross said picket line and the erection of said structural steel has been stopped; that if said picket line is maintained complainant will suffer irreparable damage for which it will have no adequate remedy at law; that the remedy of an action and damages provided by section 303 of the Taft-Hartley Act (29 U.S.C.A., section 187) is inadequate; that the complainant's valuable heavy machinery is being kept idle at complete loss to the complainant and complainant has been notified by its employees that if they are prevented from working on this job by reason of said picket line they will be forced to seek employment elsewhere; that in order to keep complainant's experienced crew of workmen together it would be necessary for the complainant to pay said employees even though they remained idle for an indeterminate time at a resulting loss to the complainant for which no adequate damages could be assessed or collected; that complainant's employees have notified complainant that unless said picket line is removed on November 20, they will seek employment elsewhere; that in addition thereto it might become necessary for complainant to default in its contract with Bear Brothers, Inc., as a result of which complainant would be subjected to suits for damages for such breach.

"(13) That said apartment building is being erected under the terms of section 608 of the National Housing Act [12 U.S. C.A. § 1743] under a commitment issued by the Federal Housing Authority certifying that such housing was essential and that there existed in Montgomery a shortage of adequate housing units for rental purposes; that since the erection of said building was begun defense activities at Gunter Field and Maxwell Field have substantially increased; that complainant is informed and believes and on such information and belief avers that the commanding officer at Maxwell Air Force Base, Montgomery, Alabama, has stated publicly that

after January 1, 1951, that defense activities at Maxwell Air Force Base will be stepped up to such an extent that said Air Force Base will have a larger personnel than ever before in its history; and before such defense activities were initiated the Chamber of Commerce was asked to ascertain whether the City of Montgomery could absorb 500 additional families and in making said survey the Chamber of Commerce took into consideration the availability of this apartment house under erection which would supply 124 additional rental units; that if the erection of said apartment house is delayed such rental units will not be available for the use of the members of the armed forces or other defense activities in and around Montgomery and the public interest will be inimically affected.

"(14) That complainant and its employees are entirely innocent parties and are in no way engaged in any labor dispute among themselves or with anyone else. That complainant's employees are unwilling to cross said picket line for the reason that if they cross said picket line they might be blackballed and prevented from working on further jobs; that the effect of the continued maintenance of such picket line is therefore to prevent complainant from engaging in business and performing its said contract and also prevents the complainant's employees from engaging in gainful employment in Montgomery to the irreparable injury to both the complainant and its employees.

The case comes here from a decree overruling a motion to dissolve an injunction which was theretofore issued. Upon the hearing of the motion the respondents withdrew an answer to the bill which had been filed and the first twenty-six grounds of the motion, leaving the twenty-seventh ground which is in substance that the complaint complains of a violation of section 8(b) of the National Labor Relations Act, 29 U.S. C.A. § 158(b), and that complainant has an adequate remedy as provided in section 10 of that Act, 29 U.S.C.A. § 160. Respondents further amended their motion to dissolve the injunction by adding grounds twenty-eight to thirty-nine, inclusive. The substance of those grounds of the motion is that the sole and exclusive remedy provided for the acts complained of is section 10 of the National Labor Relations Act as amended, and that the state court is without jurisdiction by reason of the provisions of said section 10.

Appellee, who is the complainant, insists on this appeal that under that status of the pleading the only question presented is the equity of the bill, since there is no answer denying its allegations; and then insists the bill does not show that the questions involved affected the rights of the employees and employers in their relations affecting commerce, and that so far as the allegations of the bill are concerned it relates purely to a local transaction. But the allegations of the bill itself show that reliance is had upon the National Labor Relations Act as amended, 29 U.S.C.A. § 151 et seq., for the purpose of determining whether or not the complainant is entitled to an injunction.

The bill specifically refers to the fact that the alleged picketing is secondary, as defined in section 8(b) (4) of said Act, and that the remedy provided in section 303 of. it for damages is inadequate, and that there is no adequate remedy at law.

We will refer to the Act in question as the Labor Management Relations Act of 1947 (or Labor Management Act) for that is the name given to it by section 1 of the Act. It is sometimes called the Taft-Hartley Act, but it is all one and the same Act and serves to amend the National Labor Relations Act of 1935. As amended it is codified in Title 29 U.S.C.A., beginning with section 141. Section 8(b) (4) will be found in Title 29, section 158, U.S.C.A. That section makes it unfair labor practice, so far as here material, for a labor organization or its agent: "(b) (4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease

using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to. cease doing business with any other person; (B) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9".

The bill alleges that the defendants were engaged in an unfair labor practice under such definition, and that contention is not seriously controverted by appellants.

Section 303 of that Act, which is section 187 of Title 29 U.S.C.A., makes it unlawful for any labor organization to engage in or induce or encourage employees, etc., using the same language as in section 8(b) (4), supra. Subsection (b) thereof authorizes a suit in any United States District Court for damages sustained by him by reason of such conduct.

Section 10(a) of said Act is section 160 of Title 29 U.S.C.A., and provides: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise." There was also a proviso added permitting an agreement to submit labor disputes affecting commerce to a state agency.

The question presented on this appeal is whether or not said section 10(a) serves to exclude jurisdiction of a state court to enjoin an unfair labor practice by a labor organization under section 8(b)(4) and section 303, supra, which does not impede the flow of commerce, but which incidentally affects commerce.

The jurisdiction of the board. was set up in the National Labor Relations Act before it was amended in section 10 thereof, section 160, Title 29, U.S.C.A., in the following language: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8, supra) affecting commerce. This power shall be *exclusive, and shall* not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise." The only difference between that and section 10(a) of the Labor Management Act is that in the Labor Management Act the words "exclusive and shall," as they appear together, are excluded and also the word "code," otherwise the Labor Management Act is the same as it was under the old law, except for the proviso added. Section 8(b)(4) of the Labor Management Act has no counterpart in the original Labor Relations Act. The unfair practices in the original act related to those of the employer only, whereas the addition of (b) to section 8, supra, enumerates unfair practices of a labor organization. Section 303 of the amended act, which is section 187 of Title 29 U.S.C.A., like section 8(b) has no counterpart in the original act, but is new to the amendatory act.

Under section 10(*l*) of the amended act the board has jurisdiction and power, upon complaint being made, to seek an injunction in the United States District Court restraining a labor organization from engaging in an unfair labor practice as defined by the amended act.

The original act, section 10, contained subsections extending from (a) to (i), inclusive. The amended act adds subsections (j), (k) and (*l*). They both provide in subsection (b) thereof in substance that whenever a charge is made that any person (which now includes both employer and employee) has engaged in or is engaging in such unfair labor practice, the board shall cause a complaint to be served upon such person, stating the charges. But the original act contained no provision for court action until after the board had made a cease and desist order. Under the amendment and by virtue of subsection (*l*), so far as we are here concerned, it is provided that whenever such charge is that a person has engaged in unfair labor practice within the meaning of paragraph (4)(A), (B) or (C) of section 8(b), here applicable, a preliminary investigation of such charge shall be made forthwith and, if there is reasonable cause to believe such charge, the offi-

cer or regional attorney, to whom the matter is referred, shall on behalf of the board petition in a District Court of the United States, etc., for appropriate injunctive relief pending the final adjudication of the board with respect to such matter. It will be observed, this has reference to an unfair labor practice of a labor organization and not an unfair labor practice by the employer.

So that when the complaint is against the employer court action is not available by virtue of the Act until there has been an order to cease and desist. Whereas when the complaint is as to unfair labor practice of a labor organization, such injunctive relief is available on behalf of the board if upon preliminary investigation the officer or regional attorney has cause to believe the charge is true and commerce is involved.

It therefore appears that, in respect to the situation at hand, we are dealing with an unfair labor practice of a labor organization for which a remedy is given by subsection (l) of section 10, wherein it is not necessary to wait for a determination upon the merits of the complaint before injunctive relief is made available, but this may be done promptly upon preliminary investigation, if the officer has cause to believe that the charge is true.

█ It is well understood that when the National Congress within its constitutional power passes an act conferring a right and providing a remedy, such remedy so provided is not ordinarily exclusive, thereby preventing such other remedies as may be available to obtain its benefits under state law then existing. This principle was fully considered by us in the case of Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706. We do not find where the principle there declared has been set aside by any decisions of the United States Supreme Court, but has been generally approved. Mengel Co. v. Ishee, 192 Miss. 366, 4 So.2d 878. See, Overnight Motor Trans. Co. v. Missell, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716.

██ It is clear that ordinarily the jurisdiction of a state court is competent to grant injunctive relief where the purpose of the injunction is to restrain either the unlawful means by which picketing is maintained or the unlawful purpose which is sought by it, Hotel and Restaurant Employees v. Greenwood, 249 Ala. 265, 30 So.2d 696; Milk Wagon Drivers Union v. Meadowmoor, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836; Hotel & Restaurant Employees v. Wisconsin, 315 U.S. 437, 62 S.Ct. 706, 86 L.Ed. 947; Carpenters and Joiners Union v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143, and that this right will exist, although such picketing is in respect to commerce, unless Congress has otherwise provided. Minneapolis and St. Louis R. R. Co. v. Bombolis, 241 U.S. 211, 36 S.Ct. 595, 598, 60 L.Ed. 961; Forsyth v. Central Foundry Co., supra, and cases there cited. Therefore, when commerce is affected, under the terms of the Labor Relations Act, as amended, injunctive relief in the state court would not be set aside on account of such Act of Congress, unless it clearly excluded the jurisdiction of the state court in that respect.

It is contended by appellee that section 10 (a), supra, which provides "This power (of the board) shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise," as it now appears, leaving out the word "exclusive," simply means what it says that, although there may be other remedies provided by law, they shall not affect the power of the board, which it is claimed is the plainly expressed meaning of that clause. Whereas the original act not only meant that but also meant, as it said, that the power of the board shall be exclusive.

Of course Congress could with respect to commerce make provision for an exclusive remedy, which the original act did.

It is not contended that the amended act by its terms confers any power in that respect upon a state court. But it is contended that where that power was then in existence, except as taken away by the exclusive feature of the original act, the elimination of the exclusive feature merely served to remove an impediment in the use of the remedy then existing in a state court.

In determining the effect of eliminating the exclusive term of the original act, it is necessary to analyze not only that particular feature of the amendment but the act as a whole as amended in other respects in connection with the original act itself.

Appellant places much reliance upon the case of Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183, 187, which was a case before the United States Circuit Court of Appeals. A bill for an injunction had been filed in the United States District Court by a labor union to require the employer to bargain with the union. The Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., prohibited the issuance of such an injunction. The question was whether the Labor Management Act conferred jurisdiction upon the district court in such a suit, notwithstanding the Norris-LaGuardia Act. The court held that the Labor Management Act did not confer such jurisdiction upon the District Court of the United States, except by petition of the labor board.

In order to understand the language of the opinion in that case, it must be borne in mind that the court was dealing with that particular question, especially that part of the opinion which says that the change made by eliminating the word "exclusive" did not vest the court with general jurisdiction over unfair labor practices, but was intended to recognize the jurisdiction vested in the courts by section 10, subsections (j) and (l). When it says the "courts" it was there referring to the Federal District Courts, and whether jurisdiction was conferred upon the federal courts other than at the suit of the board. The opinion quoted from the report of the conference committee of Congress respecting the effect of such a change, saying that the conference agreement accepted the Senate amendment that such exclusive jurisdiction was eliminated because of the provisions of the act authorizing temporary injunctions enjoining alleged unfair labor practices, and because it made unions suable; but retained the provision that the board's power should not be affected by other means of adjustment or prevention. The following feature of said report was also copied in said opinion: "The confer-

ence agreement adopts the provisions of the Senate amendment by retaining the language which provides the Board's powers under section 10 shall not be affected by other means of adjustment. The conference agreement makes clear that, *when two remedies exist, one before the Board and one before the courts, the remedy before the Board shall be in addition to, and not in lieu of, other remedies."* The opinion in analyzing that feature of the report, observes that "The last sentence of the quotation does not mean, of course, that a general remedy in the courts was being given by the act, *but merely that an option existed where a remedy in the courts was given by the act, or existed otherwise."* (Italics supplied.) It was also said that if the effect was intended to make a fundamental change in the jurisdiction (of federal courts) to deal with unfair labor practices that important fact would have been referred to. It is again said: "We do not mean to say that unusual cases may not arise where courts of equity could be called upon to protect the rights of parties created by the act. Cf. Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; A. F. of L. v. N. L. R. B., 308 U.S. 401, 412, 60 S.Ct. 300, 84 L.Ed. 347. What we have here, however, is not an unusual case calling for the exercise of extraordinary jurisdiction, but an ordinary unfair labor practice case involving alleged refusal to bargain. For such a case, the plaintiff has been provided an adequate administrative remedy before the Labor Board; and certainly the extraordinary powers of a court of equity may not be invoked until this administrative remedy has been exhausted. Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 4 Cir., 91 F.2d 730, 731, affirmed 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646."

That case was dealing with the jurisdiction of the United States District Court, which is of statutory creation authorized by the Constitution,—Article 3, section 1, —and whose jurisdiction is limited by congressional grant. 36 Corpus Juris Secundum, Federal Courts, § 308, p. 512.

When properly analyzed, we think the effect of that opinion, Amazon Cotton Mill Co. v. Textile Workers Union, supra, does not conflict with the contention of appellee, to the extent that it was not the intention of Congress to make the administrative remedy exclusive in respect to all unfair practices affecting commerce; but that it was to be optional *where a remedy otherwise* existed in the equity courts to protect the rights of parties from irreparable damages, when the free flow of commerce was not impeded.

We have here a court of general equity powers, having the constitutional authority to issue injunctions without other grant than by section 144, Constitution of Alabama.

In this State a labor organization, being an unincorporated association, is subject to suit under State statute. Title 7, section 143, Code. That was not so in the federal courts, but the Labor Management Act made it so that the Federal District Court may have jurisdiction at the suit of the labor board for an injunction.

It will be observed that in the Amazon Cotton Mill case, supra, the court was not dealing with the power to use an existing remedy, but was dealing only with the question of whether or not the Labor Management Act confers jurisdiction upon the District Courts of the United States at the suit of a private party, when such jurisdiction was at that time otherwise prohibited. It may be that some of the broad terms appearing in the argument would support a holding that it was intended to set aside any existing remedy at the suit of a private party in any of the courts; but when the act impliedly reserves the power than otherwise existing, the argument must be limited to the question before the court, and that was whether the Labor Management Act conferred jurisdiction at the suit of a private party which was expressly prohibited by the Norris-LaGuardia Act, intending thereby to amend the Norris-LaGuardia Act.

The clause in question, saving other means of prevention, either at the time established or that may be established, seems to manifest a purpose to take care of the jurisdictional power then being conferred by subsection (*l*) on the district courts for a violation of section 8(b), as well as any such jurisdiction "otherwise" existing in any court possessed of general power to grant injunctive relief, when the administrative remedy is inadequate.

If it was merely to harmonize with the further administrative remedy added to section 10(a) by the proviso and the procedure under subsection (*l*); it would not have been appropriate to use the language to which we have referred.

Appellant also relies upon the case of International Longshoremen v. Sunset L. & T. Co., D.C., 77 F.Supp. 119, by a District Court. That case, like the Amazon case, supra, was a determination of whether an injunction in labor disputes had been extended generally to Federal District Courts by the Labor Management Act. It must of course be considered in connection with the nature of the suit and the particular controversy before the court.

However, it is not supposed or contended by appellee that the Labor Management Act serves to enlarge the rights of private litigants or to confer jurisdiction at their suit, but merely serves to eliminate that feature of the original act which excluded all courts from exercising injunctive jurisdiction and limited all jurisdiction to the broad exclusively. The board could before the amendment make a cease and desist order and upon a failure to comply with it proceed in court for its enforcement. That procedure was exclusive.

The next case relied on by appellant is that of Amalgamated Utility Workers v. Consolidated Edison, 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738. In it a private party sought an injunction to enforce an order by the labor board, that arose prior to the 1947 amendment. We do not see that it has application to the present situation.

Another case relied on by appellant is that of Gerry of California v. Superior Court of Los Angeles, 32 Cal.2d 119, 194 P.2d 689. In that case an injunction was sought in a state court against an unfair labor practice under section 8 of the Labor Management Act, as is the instant case. The

court acted in reliance upon the case of Amalgamated Utility Workers v. Consolidated Edison, to which we referred supra. While much is said in the opinion to the effect that although the right to an injunction may exist under state law, but for the Labor Relations Act, it could not now be exercised on account of such act.

Still another case cited by appellants is Ex parte DeSilva, 33 Cal.2d 76, 199 P.2d 6. That was also a decision by the Supreme Court of California and was based upon the Gerry case, supra. See, 16 A.L. R.2d 786.

There was no consideration given in those cases to the question of whether a person has the right to an injunction to prevent irreparable damage by an unfair labor practice prohibited by the Labor Management Act, but which did not affect the flow of commerce, and in which the administrative remedy was inadequate.

Appellants also rely on the case of Amalgamated Ass'n v. Wisconsin Employment Relations Board, 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364, recently decided by the Supreme Court of the United States.

It will be observed in that case the court was not dealing with the power of a state court to enforce a right granted by an act of Congress, but it was concerning the question of whether or not a state court would enforce state legislation in a field which had been covered by federal legislation, and which was in conflict with federal legislation which had superior power in that respect. It was made clear in that case that in the state court the effort was made to enforce a state law in conflict with one adopted by Congress relating to commerce, when the federal law is superior, holding that the state law must yield to the federal law.

We wish here to refer again to the principle that when a complainant comes into a court of equity seeking an injunction for the purpose of protecting a right, it is immaterial whether that right is one conferred by state or federal law unless prohibited by federal law. It is the existence of the right which is material, and not the source of its enactment, provided

the enacting power had due authority. But when a complainant comes into court it is not for him to choose whether his right is such as is conferred by the state or federal law. When properly analyzed his right is dependent upon whether the one or the other is there effective, and it is not open to him to make a selection, for only one law obtains to fix the status of a given situation. A person cannot legislate by choosing the applicable law. Patterson v. Jefferson County, 238 Ala. 442, 191 So. 681; State ex rel. Rountree v. Summer, 248 Ala. 545, 28 So.2d 565.

In this situation, it is clear that in respect to commerce, the Federal Congress has legislated defining unfair labor practices by labor organizations as well as by employers, and such definition supersedes any state legislation doing so. The case of Amalgamated Ass'n v. Wisconsin, supra, therefore, is not in point for the purpose of determining whether or not the Labor Management Act furnishes the exclusive remedy for its enforcement. It does fix the status of unfair labor practices to the exclusion of state laws in respect to commerce.

The situation we are dealing with is entirely different from that of Amalgamated Ass'n v. Wisconsin, supra, in that, here we have no state statute setting up an employment relations board and giving it the power to enforce a labor relations law of the State, wherein such board may prescribe policies inconsistent with the national board. We have here a federal law defining unfair labor practice in commerce, which takes precedence over any state law in that respect. Our case is also different from that one in that here an employer is seeking to obtain, through the traditional jurisdiction of a court of equity, a right which the Labor Management Act has conferred upon him. We think the sole and only question is whether or not the Labor Management Act shows a clear purpose to exclude such traditional remedy afforded by the equity courts of the State to prevent irreparable injury when the flow of commerce is not impeded. So that the question is pertinent whether there can exist at the same time under applicable

law, the right to an injunction under circumstances here involved, at the suit of a board for the benefit of the employer at his instance, such suit to be in the United States District Court, and at the same time the right of such employer to elect to pursue his equitable remedy for an injunction, which the equity courts of the State provide for him.

■ The principle is well settled that more than one remedy may be available for the redress of a given wrong. That is not in conflict with the principle that there can exist but one law defining the status and rights of the parties in a given situation. When that status is fixed by law, as it is here fixed by the Labor Management Act, there may be, consistent with constitutional power, two remedies open for the enforcement of that right. Either of such remedies may be pursued in such situation.

Appellee cites the case of Hughes v. Superior Court of California, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985. In that case it was "held that the Fourteenth Amendment did not bar a State from use of injunction to prohibit picketing of a store solely in order to secure compliance with demand that store's employees be in proportion to racial origin of its then customers."

Appellee also cites the case of International Brotherhood v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995, involving the same legal status as did the Hughes case, supra. The same conclusion was reached.

It is said in the case of Pocahontas Terminal Corp. v. Portland Building and Construction Co., D.C., 93 F.Supp. 217, that the picketing described in the two latter cases, supra, might violate the unfair labor practice of the Taft-Hartley Act had that been applicable. But that the facts in both cases indicate controversies of a local nature only, not affecting the flow of interstate commerce, in contrast with the controversy then before the court.

In International Union v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978, a suit for an injunction was brought by a labor union to enjoin enforcement of a state law. There was a strike by the union without conforming to state law procedure, but it was conducted peacefully. The union contended that the state law violated the commerce clause of the Federal Constitution. The Supreme Court of the United States applied the Labor Management Act of 1947, saying that Congress safeguarded the exercise by employees of such activities and recognized the right to strike. It qualified and regulated that right and fixed certain prerequisites. It was held that the provisions of section 8(b) (4) should not be read as permitting concurrent state regulation of peaceful strikes, but that Congress occupied this field and had closed it to state regulation. The opinion recognized the power of state legislation in this area, but held that the particular status could not stand since it conflicted with the federal act. The Supreme Court of Michigan International Union of United Auto Aircraft etc., v. Wayne Prosecuting Attorney, 325 Mich. 250, 38 N.W.2d 421, had reversed a decree of the lower court enjoining the proceedings and certiorari was then brought by the union to the United States Supreme Court. No question of jurisdiction in the state court was considered. The extent to which a state may legislate in respect to unfair labor practices, defined by the Labor Management Act, was held to depend entirely upon whether it conflicts with federal law on the subject and is within the powers otherwise existing.

The term "affecting commerce" is defined in section 2(7) of the Labor Management Act as "in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

■ The power given the board by section 10(a) to prevent any person from engaging in any unfair labor practice (listed in section 8, supra) is that affecting commerce. Although the labor practices here involved may violate the provisions of the Labor Management Act, we do not think Congress intended to deprive a state court of the power to protect a person

against unlawful picketing of a local nature only, not affecting the flow of interstate commerce, but causing irreparable damage, and when the administrative remedy is inadequate. The cases of International Brotherhood of Teamsters etc., Union v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995; Building Service Employees Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045, and Giboney v. Empire Storage and Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834, have no relation to commerce, but only to the First and Fourteenth Amendments.

We will not undertake to discuss a principle applicable when the picketing is for an unlawful purpose, not conducted in an unlawful manner, but impedes the flow of interstate commerce, or when the administrative remedy is adequate. It may well be that under such circumstances Congress intended to confine the procedure to an interstate tribunal set up by it.

However, such is not this case. We think the procedure here pursued is a means of prevention, otherwise established by law under the terms of section 10(a), supra.

It therefore follows that the decree of the lower court is affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN, LAWSON, SIMPSON and STAKELY, JJ., concur.

## On Rehearing.

FOSTER, Justice.

We do not understand that appellant in his argument on application for rehearing controverts the statement in our opinion that the bill alleges facts which show the union appellant was engaged in an unfair labor practice under the Labor Management Relations Act of 1947, section 8(b), (4), (A), 29 U.S.C.A. § 158(b), (4), (A). It was not otherwise contended in oral argument on the submission. Appellant now observes that the several recent decisions of the United States Supreme Court cited in brief were not before us when our opinion was written. National Labor Relations Board v. Denver Building and Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; International Brotherhood of Electrical Workers v. National Labor Relations Board, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; National Labor Relations Board v. International Rice Milling Co., 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1277; Local 74, United Brotherhood of Carpenters and Joiners of Am., A. F. of L. v. National Labor Relations Board, 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309.

Those cases were decided a few days before this case. They or one of them was called to our attention. They support the theory, not controverted in this case, that the bill shows an unfair labor practice under the Labor Management Relations Act, supra. They also show that in order to redress that wrong a complaint was filed with the board. In some of the cases the board had a hearing and made a cease and desist order. The proceedings were to review and enforce those orders. They were upheld. The principal question controverted and settled was whether there was an unfair labor practice by the union under section 8(b), (4), (A).

In one of the cases National Labor Relations Board v. International Rice Milling Co., supra, the board dismissed the complaint because it was not such an unfair labor practice. The court sustained that ruling. It is not contended that this last case is here controlling because it applies to a different situation. In the other cases the board took jurisdiction and made a final cease and desist order. It does not appear that a preliminary injunction had been issued (as provided in section 10[1]). But the proceeding was before the Circuit Court of Appeals to enforce the board's order as provided in section 10(e). Section 160 of Title 29 U.S.C.A.

Those three latter cases only show that a remedy before the board was applied to make a final order of cease and desist. There was of course nothing new nor controversial about that.

The only question we have in this case is whether the State court has jurisdiction when special circumstances of irreparable injury are alleged and not controverted,

augmented by the necessary time of the board in making the preliminary investigation, and subject to a possibility that that board will not take jurisdiction on account of the small amount of influence the transaction has on the flow of interstate commerce. This being in the discretion of the board, it was not necessary for complainant to take that risk in a situation which was then holding up construction and causing irreparable damage. National Labor Relations Board v. Denver Building and Construction Trades Council, supra (4), 341 U.S. 675, 71 S.Ct. at pages 949, 950, 71 L.Ed. 1284. See, also, for current practice in that respect, "Release of National Labor Relations Board, dated October 6, 1950," under which the board will exercise jurisdiction when any enterprise has a direct inflow of material valued at $500,000 a year, or an indirect inflow of material valued at $1,000,000 a year.

Considering that release and the urgency of the need for an immediate injunction to prevent irreparable damage, we still think a state court of equity was open to complainant. No other court had jurisdiction. The only other remedy was before the board. We think the authorities support the view that a state court of equity has jurisdiction upon a showing of extraordinary circumstances or irreparable injury.

The application for rehearing is overruled.

LIVINGSTON, C. J., and BROWN, LAWSON, SIMPSON and STAKELY, JJ., concur.