CORRADO BROS., INC., a corporation of the State of Delaware,

*vs.*

BUILDING AND CONSTRUCTION TRADES COUNCIL OF DELAWARE, A. F. OF L., an unincorporated association using a common name; LOCAL NO. 542, INTERNATIONAL UNION OF OPERATING ENGINEERS, an unincorporated association using a common name; LOCAL NO. 199, INTERNATIONAL HOD CARRIERS AND COMMON LABORERS UNION, an unincorporated association using a common name; GERALD LEONE, and WILLIAM A. PARK.

*New Castle, May 16, 1952.*

*Joseph A. L. Errigo* and *John M. Bader,* for plaintiff.

*Joseph Donald Craven,* for defendants.

SEITZ, Chancellor: Defendants are the Building and Construction Trades Council of Delaware (hereafter called the "Council") ; as well as two of its member unions and their business agents. The Council is an association of unions in the building trades field. It has representatives of most of the unions and it manages the strike in question.

On May 13, 1950 plaintiff, Corrado Bros., Inc., contracted with Permanesque Homes, Inc., to install certain sewer lines and do other work on what is known as the Wilmington Merchandise Mart, a large commercial building development located on the Governor Printz Boulevard, a principal highway of the State of Delaware servicing north and south bound local and interstate traffic. Subsequently Permanesque Homes, Inc., assigned the contract to Metropolitan Merchandise Mart, Inc.

The general contractors in charge of the operation where the present dispute exists are Frederick and Jones, and Lewis-Skeel Construction Company. On the part of the operations in question both union and non-union members have been employed.

About September 7, 1951 the president of the Council wrote letters to Frederick and Jones and to Lewis-Skeel asking to meet with them to discuss labor conditions on their jobs at the Merchandise Mart. Nothing very specific concerning the nature of defendants' demands appears in the record although plaintiff says the defendants seek to unionize the general contractors. On the same day a letter was sent to the chairman of the board of directors of the Merchandise Mart calling attention to the fact that the chairman had stated that he would arrange for a meeting with the general contractors on the project and asking whether or not such a meeting would be arranged. No reply was forthcoming to any of these letters although all were received. Repeated attempts were made both before and after the sending of the letters to meet with the general contractors, but without success.

Subsequently, all attempts to enter into negotiations with the contractors having failed, the Council with the approval of the affiliated members placed a picket line at the construction site on about October 1, 1951. The picket line continues up until the present time. The pickets carry a placard stating that "This Construction Job Unfair Building

and Construction Trades Council AFL." Some of the pickets are and some are not workers on the Merchandise Mart project.

All of the plaintiff's employees are members of defendant, Local No. 542, International Union of Operating Engineers. These employees, pursuant to their union obligation and direction, refused to cross the picket line established by the Council. Plaintiff has been prevented from fulfilling its contract.

On October 24, 1951 plaintiff filed charges with the N.L.R.B. complaining that the defendants were guilty of an unfair labor practice under *Section* 8 (*b*) (4) (*A*) *of the Labor Management Relations Act, Title* 29, *Section* 158, *U.S.C.A.,* commonly called the *Taft-Hartley Act.* It was alleged that the labor dispute occasioned by the establishment of the picket line affected interstate commerce. It is not disputed that plaintiff was advised informally that there was no basis for its charge. Thereafter, plaintiff withdrew its petition before the Board.

Subsequently plaintiff brought this action charging that there is no *bona fide* labor dispute between plaintiff and any of its employees and that the activities of the defendants are interfering with the plaintiff's ability to perform its contract because plaintiff's employees will not cross the picket line. At the oral argument plaintiff stated that it was not seeking to enjoin picketing as such but only concerted refusal of its employees to work within the area of the picket lines. Otherwise stated, plaintiff contends that it is unlawful for the defendants to direct plaintiff's employees by word or action not to cross the picket line.

Plaintiff in effect conceded at the argument, as I believe the undisputed facts demonstrate, that this project does affect interstate commerce. I shall not relate the substantial evidence appearing in the affidavits and depositions which so demonstrates. Indeed, plaintiff so alleged before the N.L.R.B. Plaintiff explicitly disclaims any intention to rely

on a federal right or remedy. Thus, the question of State action to enforce a federally granted right is not involved. Compare *Montgomery Bldg. & Const. Trades Council v. Ledbetter Erection Co.*, 256 *Ala.* 678, 57 *So.2d* 112, appeal pending to U. S. Supreme Court.

Plaintiff argues that it is unlawful under Delaware law for these defendants to strike against this plaintiff when there is no labor dispute existing between them. This, says plaintiff, is in effect a secondary boycott which violates Delaware law. Plaintiff also contends that the strike is illegal under Delaware law because the ultimate purpose, to unionize the general contractors, is also illegal under Delaware law. I shall assume that both practices are contrary to Delaware law.

Plaintiff concedes that both charges of illegality are cognizable under the federal act. If they are legal under federal law it is difficult to imagine how they could be declared illegal under State law without running contrary to the federal act. But plaintiff says the existence of a federal right and remedy does not prevent State action unless State action is affirmatively precluded, which it denies.

Defendants contend that since this project affects interstate commerce the federal law provides the exclusive remedial procedure and this court has no jurisdiction. Defendants take the position that this is a strike against the general contractors and that it has incidentally harmed plaintiff. However, they insist that they are not striking against plaintiff and that the injury to plaintiff is an unfortunate but incidental consequence flowing from a legal strike. They point out that to require the union employees in effect not to respect the picket line is to nullify one of labor's principal collective bargaining weapons.

As stated, I have concluded that this labor dispute is in connection with a project which affects interstate commerce and is therefore one within the jurisdiction of the National Labor Relations Board. The sole question then, says plain-

tiff, is whether this court has jurisdiction in such a case, as a matter of Delaware law, to pass upon an action where it is alleged in effect that plaintiff is the victim of a secondary boycott and that the strike against the general contractor is for an illegal purpose.

The limits of State action in the field of labor management relations where interstate commerce is affected are far from clear. See 50 *Michigan Law Review*, 899, 911. It is clear that a state court may still act to prevent force, and violence under what is loosely called the police power of the state. However, no question of force or violence is here involved.

I have stated the contentions and problems at length in order to show the seriousness of the matters presented. But as I view this matter the question is whether this court, in view of the present posture of the case, should exercise jurisdiction even assuming that it has jurisdiction. This plaintiff at one time felt, and apparently still concedes, that the charges are cognizable under the federal act. I say this because plaintiff petitioned the N.L.R.B. for relief charging a violation of *Section* 8 (*b*) (4) (*A*) *of the Labor Management Relations Act of* 1947. It is not suggested that plaintiff was denied relief because the charges were not cognizable under the act or because the matter was *de minimis*. I conclude, and the plaintiff does not deny, that its charges were informally decided on their merits against it by the federal agency. Under these circumstances I feel that even though this court might have jurisdiction to consider such charges as a matter of state law, nevertheless, I believe that in the exercise of sound discretion I should decline to exercise jurisdiction in this situation. Where, as here, action is first commenced and decided on the merits under the federal act, and thereafter an action embracing the same charges is commenced in a state court alleging a violation of state law. I believe the state court should decline to exercise jurisdiction. I say this because plaintiff, in effect, has made an election. Moreover, it seems both undesirable and unseemly to

have a situation where there is a possibility of conflicting determinations concerning the same charges. While I recognize that it does happen in some situations, I believe that it is not to be encouraged in the proper administration of justice.

I therefore conclude that this court should decline to exercise its assumed jurisdiction. It is, therefore, unnecessary to decide the very serious question as to whether or not the federal government has by the Taft Hartley law affirmatively occupied this area so as to preclude the application thereto of state substantive law. See *Montgomery Bldg. v. Ledbetter, supra;* and see *Amalgamated Ass'n. v. Wisconsin,* 340 *U.S.* 383, 71 *S.Ct.* 359, 95 *L. Ed.* 364.

Defendants filed a motion to dismiss the complaint on the ground that this court lacked jurisdiction. The parties agreed that it should be treated as a motion for summary judgment. Plaintiff also filed a motion for summary judgment. I conclude that the defendants' motion whether it be considered as one to dismiss or for summary judgment should be granted and the plantiff's motion denied.

Order on notice.