64 So.2d 400

**KINARD CONST. CO. v: BUILDING TRADES COUNCIL et al.**

**8 Div. 678.**

Supreme Court of Alabama.

March 13, 1953.

Guin & Guin, Russellville, for appellant.

Bradshaw, Barnett & Haltom, Florence, for appellees.

PER CURIAM.

This is an appeal from a final decree in equity, dated June 19, 1952, dissolving a temporary injunction, which had been granted February 4, 1952, denying a prayer for a permanent injunction, denying any other relief and dismissing the cause.

The bill was filed February 4, 1952 by appellant, whom we will designate as Kinard, seeking an injunction against several trade unions, unincorporated organizations alleged to be acting through their agency known as Building Trades Council.

The business of Kinard, sought to be protected by the injunction, was the construction of two housing projects at Russellville, Alabama, under government authority and with its aid, whose cost was some $560,000. The original bill alleged that such work of Kinard affected and burdened interstate commerce and, therefore, the matters involved were controlled by the Labor Management Relations Act of June 23, 1947, known as the Taft-Hartley Act.

Later there was an amendment to the bill, and finally an amended bill having as one purpose the elimination of that feature of the original bill which stated that the business involved, affected or burdened commerce and was subject to the Taft-Hartley Act, supra, and left out any reference to commerce whatsoever. The bill sought to enjoin respondents from picketing Kinard's construction work for the purpose, it is alleged, to coerce complainant into forcing its employees to be or become members of said labor unions or one of them, and for other purposes.

The suit was tried on the amended bill, filed after the trial court had ordered a temporary injunction which had been issued. We are not here concerned with the effect of the amended bill on that injunction.

The defendant filed a plea to the jurisdiction of the court, alleging facts sufficient to show that Kinard's said construction work did in fact affect interstate commerce and contended that this suit is therefore controlled by the Taft-Hartley Act, supra, and that under it neither a state court nor any other court could enjoin the unions from conducting an unfair

labor practice so affecting commerce, except at the suit of the National Labor Relations Board.

Complainant contends that said Act does not apply because, (A) he purchases each year locally about $50,000 of the materials he uses on this project, and about $75,000 of the materials so used on the project were shipped to him in interstate commerce; and that all of his annual requirements for materials there used were about $500,000. (B) Because there is no controversy or labor dispute between him and his employees, involving a strike nor the right to strike, and that the Taft-Hartley Act only applies in respect to relations between employers and their employees, and not to unions trying to force membership by employees. And (C) that, although the Taft-Hartley Act does apply, a court of equity of the State may enjoin on the facts alleged when interstate commerce is affected no more than is here shown.

In support of Kinard's contention, designated A, supra, he refers to a "Release of National Labor Relations Board, dated October 6, 1950," in which the board declared that it will exercise jurisdiction when any enterprise has a direct inflow of material valued at $500,000 a year, or an indirect inflow of material valued at $1,-000,000 a year. It is contended for Kinard that neither the plea to the jurisdiction nor the evidence showed that Kinard's direct inflow in interstate commerce was as much as $500,000, or that his indirect inflow was as much as $1,000,000 a year.

■ But giving full force to the release of the board, supra, the effect is not that the Taft-Hartley Act does not apply. In the case of Montgomery Building and Const. Trades Council v. Ledbetter Erection Co., 256 Ala. 678, 57 So.2d 112, we held that said Act had application to determine the rights of the parties, and sustained the jurisdiction of the State court on account of the urgent need to prevent irreparable damage when the amount involved was not a burden on commerce, though it affected commerce, and we referred to the release of the board, supra. It is our view that such release does not shift the applicable statute from the Taft-Hartley Act to Alabama law. We think there is no power to do so, except legislative. And (C) we see no reason why at this time we should recede from our Ledbetter case, supra, in holding that a state court of equity has injunctive power in respect to a local enterprise, affecting commerce but not affecting its free flow nor creating a burden on it, and in respect to a business which uses material shipped in commerce within the limits of the release, supra, and when the acts of defendants are prohibited by the Taft-Hartley Act, working irreparable damage to a builder if not enjoined. If the business affects commerce, the Taft-Hartley Act applies to the extent there expressed. Compare, Katz Drug Co. v. Kavner, Mo. Sup., 249 S.W.2d 166; National Labor Relations Board v. Denver Building and Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284.

■ We think the bill states facts which make it come under the influence of such holding, and that the plea to the jurisdiction was properly held by the court to be insufficient. Probably a motion to strike it was not the appropriate way to test it. But we are not here concerned with that, and of course complainant, whose motion to strike the plea was sustained, cannot and does not complain of that ruling.

(B) Kinard also contends that the Taft-Hartley Act does not apply because it is made expressly to apply only "to prescribe the legitimate rights of both employees and employers in their relations affecting commerce * * * to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce". Title 29, U.S.C.A. § 141(b). But the quotation does not necessarily include the full sweep of that feature of the Act. American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855. Moreover, that feature of it, which is quoted supra, to protect the rights of individual employees in their relations with labor organizations, etc., has direct and specific application to the instant situation. Also section 158(b), Title 29 U.S.C.A. has particular reference to unfair labor practices charged to defendant unions in their re-

lations with employees when commerce is affected.

So that, the right of Kinard to an injunction, we think, is controlled by the question of whether the defendant labor organizations are shown to have committed an unfair labor practice under that Act, which would result in irreparable damage unless enjoined, and when complainant's enterprise affects commerce and an injunction would not burden the inflow of commerce, and its effect on commerce is within the limits set by the board for an exercise of its jurisdiction.

We assume that the respondent labor organizations were engaged in peacefully picketing the works and enterprise of complainant to coerce complainant into agreeing that he would use in the same only union members, so as to designate the labor organization as the bargaining representative of the employees to make a union contract with complainant.

Affecting that status, it is noted that none of complainant's employees were dissatisfied or sought the end which the unions demanded. The union wages, hours and working conditions were observed. To join the union laborers were required to pay large initiation fees and regular dues. They did not desire to do so. The union's purpose was to cause complainant to require them to do so. Was the picketing under those circumstances and for that purpose an unfair labor practice under the Taft-Hartley Act?

Section 158(b)(1), Title 29, U.S.C.A. provides:

"It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title * * * or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances".

Section 157, Title 29, referred to above, is as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain

collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title", (which permits such a contract).

Section 158(a)(1), Title 29, makes it "an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title".

The result here sought seems to depend upon whether the respondent unions by the picketing, in which they engaged and from which they were temporarily enjoined, were (A) coercing employees of Kinard "in the exercise of the rights guaranteed in section 157"; that is, to exercise a free choice in joining a labor organization and bargaining collectively, or not to do so; or were (B) coercing Kinard as an employer "in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances", or coercing his employees in exercising their rights under section 157, denounced as an unfair labor practice.

We see no plausible reason for a holding that it was not violative of section 158(b) (1) (A) or 158(a) (1), supra, if peaceful picketing is a form of coercion. It has been so declared. Building Service, etc., Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045; Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834.

■ The coercion of Kinard to employ union men only amounted to coercion of his employees to join the union in violation of the freedom guaranteed to them in section 157, supra, whether or not they wished to do so. Building Service, etc., Union v. Gazzam, supra.

■ The cases of Cafeteria Employees Union v. Angelos, 320 U.S. 293, 64 S.Ct.

126, 88 L.Ed. 58, and Bakery and Pastry Drivers and Helpers Local 802 of International Brotherhood of Teamsters v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178, relied on by appellees, were decided without the influence of an act such as the Taft-Hartley Act which prohibits coercion to force employees in the matter of deciding whether they will join a union or select a bargaining representative. That Act, when it applies, puts an entirely different theory on the right of labor organizations to engage in peaceful picketing. It must be for a lawful purpose to be justified. Without a legislative act it is not an unlawful purpose to picket to coerce unionization of employees. It is an unlawful purpose under the Taft-Hartley Act and some state statutes.

We have reached the conclusion that appellant was due to have a decree ordering appellees to be perpetually "enjoined from endeavoring to compel appellant to coerce his employees to join some one of appellee unions, by picketing his premises, or adjacent territory, where appellant is engaged in the construction of the two housing projects in Russellville, Alabama."

The foregoing opinion was prepared by Foster, Supernumerary Judge of this Court while serving on it at the request of the Chief Justice, under authority of Title 13, section 32, Code, and it was adopted by the Court as its opinion.

The decree of the trial court is therefore reversed and a decree is here rendered permanently enjoining appellees as indicated above.

Reversed and rendered.

All the Justices concur.

LAWSON, Justice.

The court finds that the picketing was peaceful. The conclusion of the court is not based on a holding that the objective of the pickets was unlawful under state law or that the objective ran counter to the established public policy of the state. See Klibanoff (d/b/a The Bootery) v. Tri-Cities Retail Clerks' Union, Local No. 1678, ante, p. 479, 64 So.2d 393.

Our conclusion is grounded on the finding that the picketing labor organizations have committed an unfair labor practice under the National Labor Relations Act, as amended, and on the holding that a court of equity of this state has jurisdiction to enjoin such practice. There is no question here of a common law right, as was involved in the case of Russell v. International Union, etc., post, p. 615, 64 So.2d 384.

Our holding that courts of equity of this state have jurisdiction to enjoin such practice is based in the main on our case of Montgomery Building and Const. Trades Council v. Ledbetter Erection Co., 256 Ala. 678, 57 So.2d 112. The holding in the Ledbetter case, supra, seems to be in accord with the conclusion reached by some state courts and contrary to that reached by others.

The question is a close one and will continue to prove perplexing to state courts until it is finally decided by the Supreme Court of the United States. I see no occasion at this time to recede from the holding in the Ledbetter case.

SIMPSON, J., concurs in these views.