70 So.2d 809

**MONTGOMERY BLDG. & CONST. TRADE COUNCIL**

v.

**LEDBETTER ERECTION CO., Inc.**

3 Div. 677.

Supreme Court of Alabama.

March 4, 1954.

John L. Busby, Earl McBee, Birmingham, for appellant.

Jack Crenshaw, Files Crenshaw, Montgomery, for appellee.

MERRILL, Justice.

This is an appeal from a final decree of the Montgomery County Circuit Court, in Equity, which ratified and confirmed the decree of November 20, 1950, issuing a temporary writ of injunction, overruling plea set up in answer denying the jurisdiction of the circuit court, in equity, to issue said injunction, and making the temporary injunction permanent.

This cause was originally before this court in 256 Ala. 678, 57 So.2d 112, where we affirmed a decree of the lower court overruling a motion to dissolve the injunction. Certiorari was sought in the Supreme Court of the United States and was granted, 343 U.S. 962, 72 S.Ct. 1061, 96 L.Ed. 1360;

the writ was dismissed as improvidently granted, 344 U.S. 178, 73 S.Ct. 196, 97 L.Ed. 204.

Respondents filed their plea and answer in the lower court and after alleging that they had complied with the temporary injunction by the prompt removal of the picket line, adopted a part of the affidavit of Fred C. Bear, Vice President of Bear Brothers, Inc., the general contractor, which affidavit had been filed on behalf of complainant. A portion of the adopted affidavit is as follows:

"Affiant further states that a labor dispute or stoppage of work on said project would materially obstruct or interfere with the free flow of goods in interstate commerce; that a large portion of the material used in the construction of said job are shipped in interstate commerce and if such job were stopped by union activities, the flow of such goods in commerce would cease; for example, all of the exterior covering of said apartment house is brick, which will be shipped from Texas; the glazed tile from Pennsylvania; the steel sash from Detroit, Michigan; door frames from New York; metal lath from Ohio, plaster from Georgia, Virginia and Texas, cement from various sources, including places outside of the State of Alabama; the structural steel was rolled at a rolling mill outside of the State of Alabama; paint and acoustical tile are not manufactured in the State of Alabama and are necessarily brought in from outside the State; electrical wiring and fixtures likewise, and in fact a great majority of the materials used on such job will necessarily move in interstate commerce."

The plea and answer concludes:

"In further answer, respondents separately and severally say the court does not have jurisdiction to enjoin the acts complained of in said bill of complaint as prayed therein, either by temporary or permanent injunction for the reason that exclusive jurisdiction to enjoin the same has been vested in and is now in the National Labor Relations Board by the Congress of the United States by the provision of the National Labor Relations Act or Labor-Management Relations Act, commonly known as the Taft-Hartley Act, which said act is referred to in said Bill of Complaint.

"Wherefore said respondents pray dissolution of said injunction and dismissal of said Bill of Complaint."

At the hearing held March 27, 1952, the attorneys of record for Ledbetter Construction Company, Inc., are not shown to have been present, and according to the transcript took no part in the proceedings. Messrs. Cates and Huddleston appeared "representing Bear Brothers, Inc. only as obligors on the bond." They examined Mr. Carl W. Bear, Secretary of Bear Brothers, Inc., who testified that the construction of the Walter Bragg Smith Building for Montgomery Towers, Inc., had been completed in December, 1951, and that the work of Ledbetter Erection Company a subcontractor had been completed in February, 1951.

On cross-examination, Mr. Bear corroborated that part of the affidavit of his brother which is set out above. He further stated that the overall contract price of the Walter Bragg Smith Building was between $900,000 and $1,000,000; that approximately 40% of that sum went for material and that the gross annual business of the construction company was approximately $3,000,000.

Following Mr. Bear's testimony there was a discussion between the court, Mr. McBee and Mr. Cates in which the latter made this statement: "It is my understanding that all questions of property rights under the State Law, were completely eliminated in this case. We just got into it the other day, Your Honor, and the entire cause of action, has rested on the Taft-Hartley Act [29 U. S.C.A. § 141 et seq.]"

The only evidence offered by respondents was an affidavit of Mr. McBee in which he restated their contention that the authority rested exclusively in the National Labor Relations Board; that a motion had been filed in the circuit court to increase the bond from $500 to $5000 or such amount as

the court might determine, and he stated an agreement between counsel.

The pertinent parts of the decree are:

"2. The order and decree of November 20, 1950, issuing temporary writ of injunction is ratified and confirmed.

"3. The plea set up in the answer challenging the jurisdiction of this Court to issue said injunction as prayed in this cause is overruled and denied.

"4. The said temporary injunction heretofore issued is made permanent."

The assignments of error cover these three elements of the decree.

This case was argued and submitted in this court on December 15, 1953, one day subsequent to the announcement by the Supreme Court of the United States of its decision in Garner v. Teamsters Union, 346 U. S. 485, 74 S.Ct. 161, 171. That case is similar in many respects to the case before us, especially as to allegations. The concluding paragraph of the Garner case, supra, states:

"On the basis of the allegations the petitioners could have presented this grievance to the National Labor Relations Board. The respondents were subject to being summoned before that body to justify their conduct. We think the grievance was not subject to litigation in the tribunals of the State."

We had based our decision in the case of Kinard Construction Co. v. Building Trades Council, 258 Ala. 500, 64 So.2d 400, upon our holding in the Ledbetter case. On January 19, 1954, the Supreme Court of the United States announced the following in the Building Trades Council v. Kinard Construction Co. case, 346 U.S. 933, 74 S.Ct. 373, 98 L.Ed. —:

"Per Curiam. The petition for writ of certiorari is granted, and the judgment is reversed. Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776 (A.F.L.). [346 U.S. 485] 74 S.Ct. 161. Since there has been no

clear showing that Respondent has applied to the National Labor Relations Board for appropriate relief, or that it would be futile to do so, the Court does not pass upon the question suggested by the opinion below of whether the State court could grant its own relief should the Board decline to exercise its jurisdiction."

We feel that these two decisions by the United States Supreme Court are conclusive of the legal question presented in the instant case i. e., that the state courts were without jurisdiction, and it is, therefore, due to be reversed and remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.