No. 19,817.

GEORGE J. BISHOP et al., *Plaintiffs,* v. EDWARD L. FISCHER, as Judge of the District Court, etc., *Defendant.*

SYLLABUS BY THE COURT.

1. MANDAMUS—*Vacating Restraining Order Issued by District Court Without Jurisdiction—Obstructing Flow of Gas Into Pipe Line—Special Appearance.* The plaintiffs' lessee bored producing gas wells on the plaintiffs' land and on the lessee's land, and connected the wells by pipes converged in a building erected by the lessee on the plaintiffs' land, where a meter, a pressure gauge, and other gas appliances were installed. From this point the gas produced was conducted to a pipe line located ·in a highway alongside the plaintiffs' land. The pipe line belonged to a corporation for which a receiver was appointed by the district court. The receiver was authorized by the court to purchase gas from the plaintiffs' lessee, which the receiver distributed to consumers. The plaintiffs took possession of the building, pipes, and appliances on their own land and stopped the flow of gas into the pipe line under a claim of right predicated upon their contract with the lessee. Upon application made in the receivership suit, the receiver procured an order directing a person designated by the court to remove the obstructions preventing the flow of gas into the pipe line and enjoining the plaintiffs from maintaining such obstruction or interfering with the order. Neither the plaintiffs nor their lessee were parties to the receivership suit, and the order was procured without notice to them. The order having been executed, the plaintiffs moved to set it aside because it had been made without jurisdiction. The court modified the order but did not vacate it. *Held,* the court had no jurisdiction over the parties or over the property affected by the order, the order was void, and the court may be required by writ of mandamus issuing from this court to set aside the order.

2. SAME—*No General Appearance.* The contents of the plaintiffs' motion to set aside the order considered and ·held not to constitute a general appearance in the receivership suit.

Original proceeding in mandamus. Opinion filed January 9, 1915. Provisional order of dismissal made.

*James F. Getty,* of Kansas City, for the plaintiffs.
*Ed. C. Little,* of Kansas City, for the defendant.

The opinion of the court was delivered by

BURCH, J.: The plaintiffs ask for a peremptory writ of mandamus commanding the defendant as judge of the district court to set aside an order of the court.

Briefly stated, the essential facts disclosed at the hearing are these. The plaintiffs own a tract of land which they leased for oil and gas purposes. The American Gas Company has gas rights in an adjoining tract. Two producing wells were bored on the plaintiffs' land and several producing wells were bored on the American Gas Company's land. Pipes were laid on the plaintiffs' land connecting all these wells, whereby gas produced was conducted to a common point on the plaintiffs' land. A building was erected there in which were installed a meter, a pressure gauge, and other gas appliances. From this point gas was conducted to a pipe line laid in the highway alongside the plaintiffs' land. The American Gas Company became the plaintiffs' lessee, and their claim is that the American Gas Company became such lessee upon the condition that if rentals and royalties were not paid they might terminate the lease and take possession of the pipes, building, and gas appliances on their land. Rentals and royalties were not paid. The American Gas Company became bankrupt, the plaintiffs undertook to forfeit the lease, and pursuant to their claimed contract rights they took possession of the pipes, buildings, and gas appliances on their own land. The appliances were chained and padlocked in such a way as to prevent the flow of gas into the pipe line in the highway. The pipe line in the highway belonged to the Mid-Continent Development Company. In August, 1911, in an action entitled *L. E. Inscho v. The Mid-Continent Development Company,* a receiver was appointed for the development company. Subsequently the court authorized the receiver to purchase all the gas furnished by

the American Gas Company, and gas obtained in this way was distributed to consumers. Neither the plaintiffs nor the American Gas Company were parties to the receivership suit and the receiver had no possession of the property involved in this suit, or authority over it. When the plaintiffs took possession of the means whereby gas which the receiver was authorized to buy was delivered, the receiver made an *ex parte* application to the court for an order, which was granted without notice in the following terms:

"It is therefore considered, ordered and adjudged that George Holmes as employee of the American Gas Co. remove the obstructions preventing the flow of gas from the American Gas Company's pipe lines to the Mid-Continent Development Company's pipe line and that James F. Getty and George Bishop no longer maintain any obstruction to the said flow of gas and in no way interfere with this order, until the further orders of this court."

Holmes was in fact an employee of the receiver and proceeded to execute the order by breaking into the building on the plaintiffs' land and removing locks and chains which obstructed the flow of gas into the pipe line. The order was made on November 11, 1914. After its execution, and on November 14, the plaintiffs moved the court to set aside the order on the ground that it had been made without jurisdiction. After a hearing the court modified the order in such a way as to permit the plaintiffs to cut off the flow of gas from their own wells but allowed the order to stand as to gas flowing from the American Gas Company's wells. The court disclaimed jurisdiction over the plaintiffs, but believed that the public, to whom the receiver was distributing gas coming from the American Gas Company's wells, should not have its supply cut off by any summary or arbitrary act of the plaintiffs, and on that ground reserved further judgment until it could consider the proper course to be pursued. Thereupon the

plaintiffs brought the present action, which the receiver defends for the judge of the district court.

This court has jurisdiction to issue the writ prayed for. It is granted original jurisdiction in proceedings in mandamus by the constitution. (Art. 3, § 3.) This jurisdiction is plenary and may be exercised to control the action of inferior courts, over whom this court has superintending authority. (*In re Petitt*, 84 Kan. 637, 114 Pac. 1071.)

The action of mandamus can not be used as a substitute for appeal, nor in any case where a plain and adequate remedy at law exists. In this case, however, there was no action pending against the plaintiffs in the district court. Without having jurisdiction of the plaintiffs and without having jurisdiction of the property, the district court, without notice, issued a mandatory injunction which in effect adjudicated the plaintiffs' rights and deprived them of the peaceable possession of property which no one having a claim upon it was disputing. When the court's lack of authority was called to its attention it kept the plaintiffs in suspense by reserving final judgment indefinitely. Meanwhile the plaintiffs were in a situation the practical effect of which was to destroy dominion not only over property which they claim but over property which was indisputably theirs. They were obliged to let the receiver, with whom they did not desire to deal, take the gas from their wells or else sit by and run the risk of the common field being depleted by the flow from the American Gas Company's wells. Under these circumstances the plaintiffs were not obliged to submit to the jurisdiction of the district court, nor to await its pleasure in finally disposing of the case, nor to adopt the slower remedy of appeal, if indeed they were in a situation to appeal. Their only adequate remedy was one which would free them immediately from the embarrassments of the order. (*State v. Graves*, 66 Neb. 17, 92 N. W. 159; *Tawas &c. R. R. v. Iosco, Circ. Judge*, 44

Mich. 479, 7 N. W. 65; *Detroit v. Circuit Judge,* 79 Mich. 384, 44 N. W. 622.)

In the case of *State v. Graves,* supra, Reynolds was in possession of land upon which there were removable crops. Phillips brought an action against him to restrain him from exercising proprietary rights over the land and crops. A temporary injunction was issued by Graves, judge of the district court, restraining Reynolds from trespassing on the land and from removing or attempting to remove the crops. Thereupon Reynolds, using the name of the state, brought an action of mandamus in the supreme court to compel the district judge to vacate the provisional order. In granting the writ the court said:

"The ground upon which Phillips proceeds in the actions brought by him against the relator is that the relator's lease is invalid and his possession, therefore, unlawful. Whether this position is tenable we need not determine. It may be that the lease is void. Conceding that it is, the fact still remains that relator entered under it and was in actual, exclusive and peaceable possession of the land, and of the crops growing thereon at the time the injunctions were allowed. This being so, the necessary effect of the orders made by respondent, if heeded or enforced, would be to dispossess the relator, to exclude him from the property and transfer his possessory right to Phillips, who was left free to enter and reap where he had not sown. Phillips was, it is true, claiming the land, but he did not occupy it, and the injunctions were therefore not granted for the purpose of preventing a threatened invasion of a present actual possession. Clearly the action of respondent in attempting to take from relator without a hearing or an opportunity to be heard, the possession of real and personal property which he claimed, and still claims, was rightfully his, can not be justified as an exercise of judicial power. The provisional injunction was never designed to transfer the possession of property from one litigant to another. A court or judge can not thus dispossess a party and then compel him to produce evidence and establish his title in order to obtain restitution. 'It has been decided repeatedly,'

says Mr. Justice Campbell, in *Tawas & B. C. R. Co.*
*v. Iosco Circuit Judge,* 44 Mich., 479, 'that any decree
or order divesting possession or rights on a prelimi-
nary inquiry is illegal and void, so that no one need
respect or obey it.' In *Calvert v. State,* 34 Nebr. 616,
a case which is in no material feature distinguishable
from the one at bar, it was held that the provisional
injunction allowed by the district judge was absolutely
null.   In the opinion written by Maxwell, C. J., it
is said:  'A temporary injunction merely prevents
action until a hearing can be had.   If it goes fur-
ther, and divests a party of his possession or rights
in property, it is simply void.'   This statement seems
to be fully sustained by the adjudged cases in other
jurisdictions, and we have found no decision giving
color or countenance to a contrary view.   But whether
the action of respondent be regarded as absolutely
void or only voidable, as his counsel contends, it was
manifestly an abuse and perversion of process that
ought to be speedily corrected.

"We have, of course, authority to review and re-
verse it in an appellate proceeding, but, under the
circumstances here disclosed, that remedy is not, in
our judgment, an adequate one.   The rights of the
relator can be adequately protected only by the prompt
rescission of the orders of which he complains; and
the power to grant this relief by mandamus is cer-
tainly vested in this court.   The superintendent au-
thority of the king's bench over inferior tribunals is,
to the extent that it may be exercised by the use of
the writ of mandamus, included in, and part of, the
original jurisdiction given by the constitution to the
supreme court."   (p. 21.)

No other district court had authority to control the
action of the Wyandotte district court, and conse-
quently this court was the only one to which the plain-
tiffs could apply for the desired relief.

That the order in question was made without juris-
diction is scarcely debatable.   The plaintiffs were not
parties to the receivership suit.   Neither was the
American Gas Company a party to that suit.   The
American Gas Company had a claim against the re-
ceiver for the price of gas which had been delivered to

him, ...ny had presented and was litigat ...ct did not virtually subject the gas con ...a receivership. The property in controversy w...s not involved in the receivership suit, and the receiver, a simple purchaser and distributor of gas, could not in effect condemn the building, pipes, and gas appliances on the plaintiffs' land, either in his own interest or in the public interest, any more than he could condemn the gas from the plaintiffs' wells. In any event the court's authority in the receivership suit could not be extended to an adjudication of the 'plaintiffs' claimed rights, whatever they were and whether they were valid or invalid, without making them parties or giving them notice or allowing them an opportunity to be heard. No provision was made for any of these things.

"If the plaintiff has any rights, the law guarantees to it a time, and place, and tribunal to enforce them. Those rights can not be destroyed by a decree to which it is neither party nor privy." (*A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson Co.*, 12 Kan. 127, 136.)

"The trial court undertook to vest the receiver with the custody of other valuable property which was in no way involved in the action wherein the appointment was made. . . . When the court undertook to reach out and take custody and control of property which was not the subject-matter of the controversy, it went outside its appointed sphere and its orders in respect to such property were nullities. The court had no more authority over that property than it would have had over the square on which the state-house stands. The fact that the other real estate, which may be termed the outside property, was or had been in litigation between the same parties did not enlarge the court's jurisdiction in the case in which the receiver was appointed. The outside property was entirely distinct from that involved in the action wherein the receiver was appointed, and the orders of the court relating to the former were in excess of its jurisdiction, and to that extent, at least, absolutely void." (*Bowman v. Hazen,* 69 Kan. 682, 697, 77 Pac. 589.)

It is suggested that a federal court has taken possession of the assets of the American Gas Company and has caused the pipes in controversy to be disconnected from the receiver's pipe line, and consequently that a writ of mandamus to vacate the void order can serve no purpose. What the future course of the litigation in the federal court may be can not be known, and if the order should stand the plaintiffs might at some time suddenly discover themselves to be in contempt of the district court. Besides this, it is no answer for the district court to say that another court has indirectly afforded the plaintiffs protection from the enforcement of the void order.

Finally it is urged that the plaintiffs voluntarily made a general appearance in the receivership suit by the terms of the motion to set aside the order. The motion recited that the plaintiffs were not parties to the Insho suit, that the property affected did not belong to the American Gas Company, but belonged to the plaintiffs and was exclusively on their land, that they had not sold gas to the receiver or consented to the receiver's use of the pipes, and that the order was in effect a confiscation of the plaintiffs' property, made without jurisdiction. The relief asked was that the order be dissolved, and the motion stated that the plaintiffs appeared specially and for the purpose of the motion only.

Delivering the opinion of the court in the case of *Schwab v. Mabley,* 47 Mich. 512, 11 N. W. 294, Judge Cooley said:

"Defendants are brought into court either by the service of process or some substitute therefor, or by voluntary appearance; and the voluntary appearance may be either general and for all purposes, or specially and for some particular purpose. Where the purpose to make it special appears, the court can not enlarge it and make it general, for the extent to which defendant submits himself to the jurisdiction when he thus voluntarily comes in, is determined by his own consent." (p. 515.)

There is no infallible test for determining when the purpose of an appearance is special and when general. Of course, the mere statement that the appearance is special is not controlling, although it may forestall the ordinary presumption that an appearance is general. Apparently the test applied by the supreme court of the United States is whether or not the party applying becomes "an actor in the cause." (*Merchants Heat & L. Co. v. Clow & Sons,* 204 U. S. 286, 290.) In reality this supposed test only states the problem in another way.

In the case of *Deming Investment Co. v. Ely,* 21 Wash. 102, 57 Pac. 353, it was said:

"The test as to whether an appearance is general or special is usually the relief asked. If the granting of the relief requested in the appearance is consistent with a want of jurisdiction over the person, the defendant may appear for a special purpose, without submitting himself to the jurisdiction of the court for any other purpose." (p. 107.)

In the case of *Blackburn and another v. Sweet, impleaded,* 38 Wis. 578, it was said:

"Where the moving party asks some relief which can only be granted upon the hypothesis that the court has jurisdiction of the cause and person, this is a submission to the jurisdiction, and waives all defects in the service of process." (p. 580.)

In the early case of *Adolph Cohen v. C. B. Trowbridge,* 6 Kan. 385, which has been followed many times, the syllabus reads:

"A motion in a cause based wholly on an alleged want of jurisdiction is not an appearance generally, or a waiver of any irregularity in the proceedings by which a party is attempted to be brought into court; but a motion, grounded wholly or in part upon error in the judgment, or upon irregularities, aside from the question of jurisdiction, is such waiver as constitutes an appearance." (Syl. ¶ 3.)

The plaintiffs' motion may be read in such a way as to indicate a general submission to the jurisdiction of the court, but here, as elsewhere in procedure, substance

alone is to be regarded, and it is quite clear that the sole purpose was to challenge jurisdiction. The plaintiffs did not ask to be made parties, and the relief sought, the dissolution of the order, is entirely consistent with want of jurisdiction, and could be granted upon the hypothesis that the court had no jurisdiction. This relief was not asked because of error in granting the order or on the ground of irregularity aside from the question of jurisdiction. The plaintiffs desired no decree that they owned the property. Indeed, it would have been impossible for the court to adjudicate that fact as the case stood—on a simple motion and in the absence of the American Gas Company, which was not a party. The facts concerning the ownership and location of the property were stated to show the character of the right invaded, that the plaintiffs were claimants of absolute property interests which the court lacked power to divest summarily by an *ex parte* order. Likewise the plaintiffs did not desire a decree that they were free from relations with the receiver in the marketing of gas and use of the pipes. The facts concerning those matters were stated to show that the plaintiffs were not related to the business of the receivership in any way which would give the court jurisdiction over them or over the property in controversy. Read in this way the motion is consistent throughout with the idea of a special appearance to set aside the order for want of jurisdiction. . While the plaintiffs ran some risk in thus attempting to exclude grounds of jurisdiction, the court is satisfied that such was their purpose, and such being their purpose the court will not enlarge the appearance to make it general. This court is all the more ready to adopt this conclusion because is seems to have been the view of the district court. The proposition that the plaintiffs made a general appearance is presented for the first time by the receiver in this court. The district court's view was indicated at the close of the hearing as follows:

"THE COURT: I have jurisdiction over the receiver

and the receiver and people under him have equities and they are in court and entitled to the protection of this court to the extent of preventing any one cutting off the supply of the gas without right. Now I am not sure just what the rights are in regard to that pipe going across this land; but I don't believe Mr. Bishop has any right to jump in there and tear up a main or close it off, that is, a general supply pipe, from customers of wells back behind his land so as to keep it away from whoever acquires the right to use it. . . .

"MR. GETTY: They are using our land.

"THE COURT: This pipe runs across there and does not hurt your land as I get it. . . . I have no more jurisdiction over Mr. Bishop than anybody else, but he should not interfere with the supply of gas to these consumers."

The judge of the district court acted candidly and conscientiously. His solicitude for people who might be depending in part upon this supply of fuel and light in wintertime was commendable, and his reservation of final decision until he could satisfy himself fully as to the proper course to pursue was the result of this solicitude. Under these circumstances the present order will be that if the order of the district court be set aside within ten days from the filing of this opinion, this proceeding will be dismissed without costs, which are practically nominal, to either party.