No. 34,698

CAROLINE STEVENS and JAMES McCABE, *Plaintiffs*, v. JOSEPH H. McDOWELL, Judge of the City Court of Kansas City, Division No. 2, *Defendant*.

(98 P. 2d 123)

Opinion filed January 27, 1940.

*Thomas E. Joyce,* of Kansas City, for the plaintiffs.

*H. S. Roberts* and *Frank L. Bates,* both of Kansas City, for the defendant.

The opinion of the court was delivered by

DAWSON, C. J.: Plaintiffs invoke our original jurisdiction in mandamus to require the defendant, a judge of the city court of Kansas City, to certify to the district court certain proceedings in forcible detainer pending in his court on the ground that they had progressed to a point where it was clear that the title to real property was in dispute.

The pertinent facts, in brief, are these: On October 20, 1939, one Samuel Bobrecker filed in division No. 2 of the city court of Kansas City, presided over by the defendant, Joseph H. McDowell, a complaint in forcible detainer against James McCabe to recover the possession of a house and parcel of ground. Bobrecker averred that prior to the filing of such complaint he had made timely service of notice on McCabe to quit and vacate the premises within three days, that McCabe did not vacate, that plaintiff was entitled to possession, and prayed for restitution of the premises. This complaint was verified, and summons was duly issued and served thereon.

Before answering Bobrecker's complaint, McCabe and one Caro-

line Stevens commenced an action in the district court against Bobrecker, alleging in their verified petition that in August, 1923, Caroline Stevens had made a written contract with Brobecker for the purchase of the property involved in the forcible detainer proceedings; that the contract price was $2,500, that she made a down payment of $300, and agreed to pay $25 per month out of which monthly sums the earned interest on the unpaid purchase price should be deducted and the net remainder applied toward the extinction of the purchase price; that Caroline Stevens paid a total of $1,426 on this contract prior to May 15, 1935; and that Bobrecker then agreed to reduce the monthly payments to $15 per month if James McCabe, son of Caroline, would execute a contract for the purchase of the property in lieu of the one between Caroline and Bobrecker made in August, 1923. Caroline further alleged that such proposed contract was made on June 11, 1935, and pursuant thereto Caroline and McCabe had made numerous payments whereby the balance due on the original purchase price had been reduced to approximately $900, and that they had a substantial equity in the real property involved, but that Bobrecker had instituted an action in forcible detainer in the city court seeking to oust them from possession; that they had demanded of Bobrecker a statement of the exact balance he claimed to be due on the contract of purchase. Their petition concluded with a prayer that the exact amount due on the contract of purchase be ascertained, that Bobrecker be declared to hold merely an equitable mortgage on the property, that he be restrained from prosecuting the action in detainer in the city court, and for other equitable relief.

On November 3, 1939, Caroline Stevens on her own motion was made a defendant in the detainer proceedings in the city court, and on November 5 she and McCabe filed an answer therein, pleading substantially the same facts as alleged in their verified petition in the district court, and alleging the pendency of the action in the latter court and reciting its substance, and the relief prayed for therein, and alleging that under the facts alleged in their answer the title to the real estate was in dispute, and that under the provisions of G. S. 1935, 61-107, the city court should so find and certify the action to the district court for determination. This answer was verified.

On November 10, 1939, the proceedings in detainer came on before the city court for consideration and were disposed of according to the record as follows:

"11-10-39. Trial by court. Court orders Caroline Stevens made a party defendant. Court finds that the title to the real property involved herein is in dispute, a case in the district court of Wyandotte county is pending wherein said title is being litigated No. 58,891-A; but the court further finds that this court has jurisdiction herein under section 67-250-1, G. S. 1935. Complaint is hereby found true and defendants' application to certify case to district court is overruled. Judgment in favor of plaintiff vs. defendants Caroline Stevens and James McCabe for restitution of premises and costs.

JOSEPH H. McDowELL, *Judge*.

On the facts narrated above this proceeding in mandamus has been amicably submitted to us by the litigants herein. No material facts are in dispute. Contemporaneously with the application for the writ, the judges of the city court of Kansas City sent a communication to this court, which, in part, reads:

"In re: Bobrecker vs. Stevens and McCabe, City Court of Kansas City, Kansas.

". . . For some time there has existed a confusion in this county, among the members of the bar and in the various divisions of the district court of this county on the following proposition:

"Real estate operators in this county have popularized the use of an instrument termed 'option agreement, form 319 and 319A.' About half of the peaceful entry and forcible detainer cases filed in our city courts deal with these instruments.

"Under section 61-107, G. S. 1935, city courts (justice courts) do not have jurisdiction of cases involving the title of real estate. Under section 67-250, 67-251, city courts are given specific jurisdiction in cases involving the 'option agreements.'

"[Counsel] for the defendants in the above case intends to apply for a writ of mandamus and determine this question. It would be a great help to the city courts if the supreme court will take jurisdiction in this case and render a decision that would be a guide to us in future litigation.

"(Signed)   CLARK E. TUCKER, Judge Div. 1,
"(Signed)   JOSEPH H. McDowELL, Judge Div. 2."

Defendants answer to the alternative writ, in part, reads:

IV

"Defendant admits that he made a finding in said cause that the title to the real estate described in the complaint in said action was in dispute. . . .

. . . . . . . . . . . . . .

VI

"Defendant admits that he refused to certify said city court action to the district court for determination under the provisions of section 61-107 General Statutes of Kansas of 1935.

VII

"Defendant states that the said city court is expressly given jurisdiction of actions of the character of said city court action and authority to render the

judgment he did in said action under the provisions of sections 67-250, 67-251. Defendant denies that the said statute is in violation of the constitution of the state of Kansas, as alleged by the plaintiffs herein.

. . . . . . . . . . . . . . .

### XII

"That the plaintiff in said city court action disputed the conclusions in said answer to the effect that the defendants therein had reduced the amount of $1,426 necessary to be paid to purchase said real estate under the terms and provisions of said second option to $900, and the *plaintiff therein contended that said amount had only been reduced to $1,199.94.*"

The bench and bar of this state have long been familiar with a form of real-estate contract between two parties, whom for convenience we will name as the owner-vendor and the tenant-vendee, in which the former names a price at which he will sell the property and names a specified amount to be paid monthly, and in which he agrees to let the latter into possession upon condition that if the monthly payments are made until their aggregate sum amounts to the specified purchase price the property shall be conveyed to the latter; but if the tenant-vendee fails in his monthly payments then whatever amounts he shall have paid are to be considered merely as rent for the premises, and he shall have no interest in the property and may be removed therefrom as in forcible detainer. There are many clever, even devious, contracts to this effect, and the sum of judicial dealing with them in this and other courts may be stated to this effect: If the down payment by the tenant-vendee has been negligible, and his monthly payments have been but few or have only been paid irregularly, to the manifest loss of the owner-vendor, the contract will ordinarily be enforced according to its terms. (*Roberts v. Yaw,* 62 Kan. 43, 49, 61 Pac. 409; *Drollinger v. Carson,* 97 Kan. 502, 155 Pac. 923; *Heard v. Gephart,* 118 Kan. 82, 233 Pac. 1044; *Rieke v. Smith,* 144 Kan. 643, 62 P. 2d 889.)

But if the monthly payments have been made with reasonable promptness and have been made for such a length of time that their aggregate amount constitutes the equivalent of a substantial payment on the purchase price, or where substantial improvements have been made by the tenant-vendee, then equity may not permit the interest of the tenant-vendee to be summarily extinguished in forcible detainer, but will deal with the situation according to equitable principles, and may require proceedings as in equitable foreclosure before the interest of the latter can be extinguished. Cases illustrating various aspects of this doctrine run through all our reports. (*Courtney v. Woodworth,* 9 Kan. 443; *Holcomb v. Dowell,*

15 Kan. 378; *National Land Co. v. Perry*, 23 Kan. 140; *Usher v. Hollister*, 58 Kan. 431, 49 Pac. 525; *McCullough v. Finley*, 69 Kan. 705, 707, 77 Pac. 696; *Geffert v. Geffert*, 98 Kan. 57, 157 Pac. 348; *Yost v. Guinn*, 106 Kan. 465, 188 Pac. 427; *Holman v. Joslin*, 110 Kan. 674, 205 Pac. 629; *Marquez v. Cave*, 134 Kan. 374, 5 P. 2d 1081; *Ditzen v. Given*, 139 Kan. 506, 32 P. 2d 448; *Home Owners' Loan Corp. v. Jaremko*, 146 Kan. 328, 69 P. 2d 1096.)

See, also, 6 Kan. Bar Journal, 328-330.

The logical deduction from the doctrine stated above is that where the periodical payments by the tenant-vendee in their aggregate amount to a substantial part of the purchase price he thereby acquires such an equitable interest in the property that his rights therein (as well as those of the owner-vendor) can only be adjudicated and protected in a court of general jurisdiction. Here the interest of plaintiffs (defendants in the *detainer* proceedings) is obvious—only the exact balance due being in issue as shown in paragraph XII of the answer quoted above. The title to the property was brought squarely into the dispute under the issues formed by the pleadings, and the statute directs that in such case the action shall be stayed before the justice of the peace (or the city court), and shall be certified to the district court for further proceedings. (G. S. 1935, 61-107.)

In the instant case the answer specifically admits that in the forcible detainer case the city court made an express finding that the title to the property was in dispute, but that it did not certify the proceedings before it to the district court because of chapter 134 of the Laws of 1927 (G. S. 1935, 67-250, 67-251 and 67-251a).

Let us take notice of that statute. Its title reads:

"An act in regard to option agreements with respect to real property upon which there has been constructed a dwelling house in cities of the first class now having or hereafter acquiring a population of more than one hundred thousand (100,000)."

By its terms the owner of residential property in any city having over 100,000 population may enter into an option agreement with any person for the right to purchase such property for an agreed amount, with the right to renew the option agreement from time to time by payment of a stated amount, and the owner will give him credit on the purchase price for all sums so paid, and the person so paying (and complying with other details needless to be stated here) shall thereby acquire the right to purchase the property, but shall

not acquire any interest therein. The statute further provides that upon failure of the optionee to comply with the terms of the contract, the owner may bring a suit in equity to forfeit the option agreement and all rights of the optionee thereunder. The statute prescribes a special procedure for such cases, gives the optionee a reasonable time, not exceeding six months, in which to pay in full, in which case the owner shall execute to him a deed conveying the property to the optionee. The statute, section 2, in part, continues, thus:

". . . . . But nothing herein shall be construed to prevent the party granting said option or his successors or grantees, where there is a provision embodied in said option agreement, giving the party to whom said option is given the right to occupy the premises in question, to recover possession by an action in forcible detainer when the conditions of said agreement, for occupancy, have been broken, . . ."

Section 3 provides:

"All acts or parts of acts that may in any way conflict with this act shall not apply to or be held to in any way modify or control option agreements provided for in this act."

But for this statute, which is only applicable in cities of 100,000 population or more, the very substantial interests of Caroline Stevens and James McCabe in the property they have labored so long to pay for would be protected by the general principles of equity we have stated above. But unfortunately for them the humane public policy for dealing with the interests of debtors which had its inception at the foundation of this state and has been consistently adhered to throughout its history, as evidenced by its homestead law, its generous exemption laws, the well-known attitude of its courts to frown on forfeitures and their aversion to the enforcement of hard bargains—such considerations are not to be applied for the relief of debtors in cities of 100,000 population or more, at least not to the extent they prevail elsewhere in Kansas. If this house and lot in controversy were situated anywhere except in a city of 100,000 population, when the facts developed in the forcible detainer case were made to appear, the case would be stayed in the city court and the cause certified to a court of general jurisdiction, vested with the full judicial power of the state both at law and in equity, and adequately equipped to deal with it. (*Linder v. Warnock*, 91 Kan. 272, 137 Pac. 962; *Bramwell v. Trower*, 92 Kan. 144, 139 Pac. 1098.) So certified, while we cannot say in advance how the district court would deal with it, that court would have the

power to decree that the status of Brobecker was that of an equitable mortgagee, that plaintiffs' status was that of owners of the equitable interest, the exact balance due would be determined; Brobecker would be given judgment therefor and foreclosure would be decreed, the property sold, a redemption period of eighteen months prescribed, and meanwhile plaintiffs could not be disturbed in their possession. We do not say that such would be the judgment of the district court. We merely repeat that under the familiar precedents cited above, such a judgment might be decreed. And why not in Kansas City? Why are debtors or tenant-vendees in a city of 100,000 population not to enjoy the leniency and humanity of Kansas law to which all other Kansans are entitled?

The constitution declares that all laws of a general nature shall have a uniform operation throughout the state. (Art. 2, § 17.) A law which curtails the property rights of persons living in cities of 100,000 population in respect to their equitable interests in real estate, and denies them such rights accorded by law to all other persons violates this constitutional principle. In *State, ex rel., v. Deming*, 98 Kan. 420, 425, 158 Pac. 34, where the procedural provisions of an act creating a special court in Hutchinson were denounced, we said:

"Why should the ·salutary provisions of law to prevent oppression of debtors operative throughout the state (Laws 1913, ch. 232) not apply to debtors in any counties of 55,000 population or less, having one or more cities of 16,000 population or more? And if justifiable where the county does not constitute a separate judicial district; then why not in a county which does constitute a separate judicial district? Are debtors more or less needy in such a county as this act is designed to cover? And if this act serves any useful purpose in a county, in its cities of more than 16,000 population and in its rural districts, why not also in its cities of less than 16,000 population? Is there anything peculiar in such a county that warrants a departure from the ordinary procedure for the administration of justice?"

The same section of the constitution declares that in all cases where a general law can be made applicable, no special law shall be enacted. What is the peculiar difficulty about drafting and enacting a general law to govern contracts for the purchase of residential real estate in Kansas City which does not exist in respect to contracts for the purchase of residential property in Hiawatha, Lindsborg or Dodge City? The answer is that there is no such difficulty. Not only so, but the rights of the parties to such contracts in Kansas City *were* governed by the uniform law which prevails throughout

the state until this ill-advised and manifestly unjust and oppressive statute of 1927 was enacted.

The same section of the constitution under which the statute of 1927 must be scrutinized provides that the question whether a special enactment is repugnant to the constitutional provision requiring uniformity is a responsibility imposed on the courts for determination. Since this judicial responsibility was vested in the judiciary, this court has given a somewhat tolerant countenance to much legislation where legislative draftsmanship encountered difficulties in providing legislation to meet local conditions; but we have always looked with a critical eye at special statutes designed to tamper with the procedure prescribed by law for the uniform administration of justice throughout the state. In *State, ex rel., v. Deming,* supra it was held:

"Chapter 196 of the Laws of 1915, which prescribes a different rule from that of the general law for the administration of justice as to service of process, procedure, the law of garnishment, the giving of bonds in garnishment and on appeal violates the uniformity clause of the state constitution. (Const., Art. 2, § 17)."

See, also, *State v. Hutchings,* 79 Kan. 191, 98 Pac. 797; *Howard v. McIntosh,* 118 Kan. 591, 235 Pac. 1034.

It seems clear that the statute of 1927 (G. S. 1935, 67-250 *et seq.*) violates the uniformity requirement of the state constitution (art. 2, § 17) and is therefore void. Our conclusion is that plaintiffs are entitled to judgment, but under the rule announced in *Bishop v. Fischer,* 94 Kan. 105, 115, 145 Pac. 890, and followed in *Estey v. Holdren,* 126 Kan. 385, 389, 267 Pac. 1098, no formal writ will issue and no costs will be imposed. It is so ordered.