No. 40,013

AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, LOCAL UNION No. 576; RALPH ANGLE, President; CARL H. NOTHNAGEL, Secretary-Treasurer and Business Representative; and all Officers, Trustees and Members of Local No. 576, Amalgamated Meat Cutters and Butcher Workmen of North America, *Plaintiffs*, v. HONORABLE JUDGE BERYL JOHNSON, Third Judicial District Judge, Shawnee County, Kansas, First Division, HONORABLE PAUL H. HEINZ, Third Judicial District Judge, Shawnee County, Kansas, Second Division, *Defendants*.

(286 P. 2d 182)

Opinion filed July 13, 1955.

*Robert L. Kimbrough,* of Topeka, and *Mozart G. Ratner,* of Chicago, Ill., argued the cause and *George E. McCullough,* of Topeka, was with them on the briefs for the plaintiffs.

No appearance made for the defendants.

*Philip H. Lewis* and *James W. Porter,* both of Topeka, appeared as *amici curiae.*

The opinion of the court was delivered by

SMITH, J: This is an original action in mandamus wherein the plaintiffs, a labor union and the officers thereof, ask us to order the defendants to dissolve a temporary restraining order originally issued by Beryl Johnson, Judge of the First Division of the District Court of Shawnee County, on June 7, 1955, and extended by defendant, Paul Heinz, Judge of the Second Division of the District Court of Shawnee County, until June 21, 1955, and July 15, 1955. The action in which the restraining order was issued involved an interpretation of what is known as the National Labor Relations Act, 29 U. S. C. (Supp. III), Section 151 *et seq.* On account of the official position of the defendants and the peculiar relief asked we did not issue an alternative writ when the action was filed, but pursuant to G. S. 1949, 60-1705, set the matter down for hearing on June 30, 1955, at 10 a. m., gave notice to the defendants of the hearing and ordered plaintiffs to serve upon them copies of the motion for an alternative writ. When the hour of the hearing arrived neither one of the defendants appeared either in person or by counsel. Counsel who had represented the plaintiffs in the action in which the restraining order was issued appeared as friends of the court. Counsel for plaintiffs appeared, made an oral argument and filed a brief. Counsel who appeared as friends of the court made no argument and filed no brief. They did make statements of fact.

Pursuant to G. S. 1949, 60-1704, we have considered the case as to whether we would issue an alternative writ, not issue any writ at all, or issue a peremptory writ. Fortunately there is very little dispute as to the actual facts. The facts hereinafter set out we glean from the motion itself, a transcript of what transpired at the hearing on the extension of the restraining order and certain official exhibits.

The motion first stated the official position of the defendants. It

then stated that the plaintiff labor organization was organized for the purpose of aiding the members to be more skillful and efficient workers, to regulate their wages, hours and conditions of employment, protect their individual rights to the prosecution of their trades and promote such other objects for which laboring men might lawfully combine. Other individual plaintiffs were alleged to be officers of the Union. The plaintiffs in this action will be hereafter referred to in this opinion as the Union.

The motion then alleged that on June 6, 1955, the Union filed in the district court of Shawnee county a petition against the Ohse Meat Products Company and other defendants in which they alleged that employees of Ohse were attempting to organize, join and assist the Union for their mutual aid and protection and had designated the Union as bargaining representative for the purpose of bargaining with Ohse in respect to rates of pay, wages, hours of employment and other conditions of employment; that the defendant denied recognition of the Union and refused to negotiate with it; that Ohse Meat Products Company were engaged in a conspiracy to intimidate the employees by threatening to reduce wages of the employees if they attempted to join a Union; threatening to close down the plant; threatening to withdraw insurance policies; and threatening to discharge employees; that all such acts were in violation of G. S. 1949, 44-808, subsection 1. The petition prayed that Ohse be enjoined from such practices and for a restraining order. There was no allegation of any order being issued pursuant to that petition.

The motion then alleged that on June 7, 1955, Ohse filed a petition in the district court of Shawnee county against the Union; that it alleged the plaintiffs were in the business of processing, sale and distribution of meat products; defendants were a duly organized labor organization and on or about May 31, 1955, the Union claimed to represent a majority of the Ohse employees and demanded that plaintiffs recognize and bargain with the Union and Ohse refused to recognize the Union in the absence of an election. The petition alleged that there was no controversy or dispute existing between the plaintiffs and its employees and none of the employees of plaintiffs were on strike; that defendants placed pickets at the rear of plaintiffs' place of business, the purpose of which was to interfere with the plaintiffs' trade and to destroy the good will the plaintiffs had built up and such picketing was inflict-

ing irreparable injury on them. The petition did not allege that the plaintiffs had appealed to the National Labor Relations Board for relief against the Union nor did it allege that any such application would be futile because the board would refuse to assert jurisdiction. The prayer was for a temporary injunction.

On the date the petition was filed defendant Johnson issued *ex parte,* without formal notice to the Union, a temporary restraining order restraining the Union for seven days from maintaining pickets at the Ohse plant. The above is the restraining order as extended by defendant Heinz, which plaintiffs in this action ask us to order the judges to dissolve.

We return now to the allegations of the motion now before us.

The motion then alleged that the Union demurred to the petition on various grounds; that on June 14, 1955, there was a hearing before defendant Heinz on a motion to extend the restraining order by Ohse on the ground that Ohse had requested the Labor Relations Board to take jurisdiction and hold an election to determine whether or not the employees of Ohse wanted to be organized into a Union; that the board had indicated through its field representative that it could not act upon the petition within the time set by the restraining order and it was necessary to have it extended for another seven days or until the board could act; that this motion was resisted by the Union, alleging that the district court of Shawnee county did not have jurisdiction of the subject matter because the facts alleged in the Ohse petition constituted unfair practices under the Labor Relations Act, 29 U. S. C. 151 *et seq.,* and the board only had jurisdiction. The motion then set out portions of the transcript of the hearing on the motion to extend the restraining order and certain authorities we shall consider later in this opinion, which were called to the attention of the court. The seven days' extension was granted.

The motion then alleged authorities which they claimed sustained their position that we should issue a writ of mandamus under the circumstances; that the issuance of an alternative writ of mandamus was necessary to prevent irreparable injury to the Union.

The prayer was that we issue an alternative writ of mandamus commanding the defendant judges to dismiss the petition in the action wherein Ohse is plaintiff and the Union is defendant and to dissolve the restraining order and adjudge defendants to pay the costs, including a reasonable attorney fee.

This record discloses that on June 13, 1955, the Union filed with the National Labor Relations Board a charge alleging that since May 1, 1955, Ohse had violated the National Labor Relations Act by interfering, restraining and coercing employees in the exercise of their right to join and bargain collectively through the Union; by interrogation of individual employees by groups; by stating if the Union came in they would be working thirty-six hours a week, they would lose insurance rights then enjoyed and the company would shut the plant down; and engaged in other acts for the purpose of dissuading employees from joining the Union by threatening loss of employment if the employees joined the Union. The charge also alleged Ohse had violated other sections of the National Labor Relations Act. The board notified Ohse of the filing of the charge and assumed jurisdiction of it by undertaking an investigation of the merits. On May 13, 1955, because of the pendency of the charge the regional director postponed the hearing on the charge filed by Ohse, which had been scheduled for June 17, 1955.

Attached to the motion for an alternative writ was a transcript of the proceedings before defendant Heinz on June 14, 1955.

Counsel for Ohse at this hearing moved to extend the temporary restraining order because the National Labor Relations Board had advised Ohse it would not have time to conduct an election on Ohse's petition prior to the expiration of the temporary restraining order and requested that it be extended for another 7 days at least until the National Labor Relations Board could act upon the petition which had been filed with them since the granting of this order by Judge Johnson.

Counsel for the Union objected to the extension on the ground that congress had placed jurisdiction over such disputes in the Labor Relations Board by the enactment of the Labor Relations Act —hence the district court of Shawnee county was without any jurisdiction whatever. During the argument of this motion the following colloquy occurred, counsel for Ohse stated:

"All we are asking, Judge, is an extension of time for just, until this National Labor Relations Board can really take jurisdiction or not. I don't know about these decisions, I haven't read them."

The court ruled:

"Your representatives, they walk in and they say to Ohse people, 'We represent your employees,' where there is no, up to then so far as Ohse is concerned, there has been no dispute, just like up there at Ed Marlings. In order to determine that Ohse does the only thing he can do, he gets a restraining order to

keep pickets out until he can let the federal outfit take jurisdiction . . . I am going to grant the seven days and if there is nothing done in the meantime we will see about it further then."

The restraining order was extended to June 21, 1955, at that time. Later and on June 21 it was extended to July 15, 1955. On June 20, 1955, plaintiffs filed this motion for an alternative writ of mandamus.

As heretofore stated, pursuant to G. S. 1949, 60-1705, we did not on account of the official capacity of the defendants issue an alternative writ but set the motion down for a day certain and ordered the defendants to have notice thereof. On the day set the defendants did not appear either in person or by counsel. Counsel for Ohse appeared as friends of the court. They made no argument but did call some facts to our attention.

Counsel for plaintiffs state the questions to be:

"1. Did the Court below act beyond the bounds of its jurisdiction, and deprive plaintiffs of rights guaranteed to them by the United States Constitution and federal laws, by entering and extending the temporary restraining order in issue?

"2. Do plaintiffs have an adequate legal remedy by appeal to correct the defendants' usurpation of jurisdiction and to vindicate the exercise of their federal rights?"

We shall consider the second question first. Ordinarily the remedy for the correction of an erroneous ruling by a district court is by appeal. This is so well settled as not to require citation of authorities. Among the orders from which an appeal may be taken is one that discharges, vacates or modifies an injunction. (See G. S. 1949, 60-3302.) The order made by the trial court and later extended was a restraining order. As pointed out heretofore in this opinion, this restraining order was kept in force over the objection of counsel from June 7, 1955, to June 21, 1955, and but for the intervention of this court would be in effect until July 15, 1955. We have held that a restraining order was not appealable. (See *Cooley v. Shepherd,* 170 Kan. 232, 225 P. 2d 75; also *Smith v. City of Kansas City,* 167 Kan. 684, 208 P. 2d 233.) Plaintiffs in this case had no remedy by appeal. Mandamus is an extraordinary legal remedy. It is one of the remedies in which we have original jurisdiction. (See Art. 3, Sec. 3, State Constitution.) This court has expanded the use to which it may be put far beyond the ancient limitations placed upon the remedy. Its purpose is to compel the performance of any act which the law specially enjoins as a duty resulting from an office. (See G. S. 1949, 60-1701.)

It will not be used to compel the performance of an official act where the law vests a discretion in the official. Neither will it be used to compel the performance of an act which requires the exercise of judicial discretion or where there is a plain and adequate remedy at law. In *Bishop v. Fischer,* 94 Kan. 105, 145 Pac. 890, we considered such a question and said:

"The action of mandamus can not be used as a substitute for appeal, nor in any case where a plain and adequate remedy at law exists. In this case, however, there was no action pending against the plaintiffs in the district court. Without having jurisdiction of the plaintiffs and without having jurisdiction of the property, the district court, without notice, issued a mandatory injunction which in effect adjudicated the plaintiffs' rights and deprived them of the peaceable possession of property which no one having a claim upon it was disputing. When the court's lack of authority was called to its attention it kept the plaintiffs in suspense by reserving final judgment indefinitely. Meanwhile the plaintiffs were in a situation the practical effect of which was to destroy dominion not only over property which they claim but over property which was indisputably theirs. They were obliged to let the receiver, with whom they did not desire to deal, take the gas from their wells or else sit by and run the risk of the common field being depleted by the flow from the American Gas Company's wells. Under these circumstances the plaintiffs were not obliged to submit to the jurisdiction of the district court, nor to await its pleasure in finally disposing of the case, nor to adopt the slower remedy of appeal, if indeed they were in a situation to appeal. Their only adequate remedy was one which would free them immediately from the embarrassments of the order."

We shall therefore consider the two questions propounded by plaintiffs together. To do so we shall rephrase somewhat the first question thus: Was the lack of jurisdiction to entertain the action in the first place and to issue the restraining order so plain and well settled as to make it the clear legal duty of defendants to dissolve such restraining order once the law was called to defendants' attention? If it was the clear, legal duty of defendants to dissolve such order, then mandamus will lie and a peremptory writ should issue.

"When the right to require the performance of the act is clear, and it is apparent that no valid excuse can be given for not performing it, a peremptory mandamus may be allowed in the first instance; . . ."

(See G. S. 1949, 60-1704.)

All parties concede there is a labor dispute as contemplated by the provisions of the National Labor Relations Act. There is no denial but that there is a labor dispute nor that the board has taken jurisdiction by sending examiners into the field to conduct an investigation. Such investigation was only held in abeyance awaiting

the outcome of this action. We go then to a consideration of the provisions of that act as they apply to the situation we have here.

This controversy arises on account of the industrial unrest throughout the nation. This brought about the enactment of the first National Labor Relations Statute in 1935, commonly known as the Wagner Act. It covered the entire field of disputes between management and labor. It was later amended in 1947 by what is known as the Taft-Hartley Law.

The nature of the subject matter of the Act as well as the fact that it covered the nation by its terms, and in some instances was the means by which the federal government entered a field of regulatory activity, which before had been under jurisdiction and control of the states, made it inevitable that what Justice Frankfurter termed this penumbral area would result in litigation. This peculiar nation of ours where we have forty-eight sovereignties functioning sometimes under and sometimes side by side with a federal sovereignty, each one with trial courts of its own, and each one with a court of last resort, has been productive of litigation.

At the outset we note, however, that Article VI of the Constitution of the United States provides in part as follows:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby."

This section has been passed on many times. One of the rules is that in a field where there was concurrent jurisdiction and the federal government had not acted, the state could act but whenever the federal government did enter the field, it occupied it to the exclusion of the state government or agency. (See *Gibbons v. Ogden,* 22 U. S. 1, also *Nor. Pac. Ry. v. Washington,* 222 U. S. 370.)

The federal government entered the field of control and settlements of labor disputes by the enactment of the Norris-La Guardia and the Taft-Hartley Acts. We first note the question whether the Ohse Company is engaged in interstate commerce so as to come under the act.

In *Sykes v. Lochmann,* 156 Kan. 223, 132 P. 2d 620, we had a case under the "Fair. Labor Standards Act." Lochmann operated a packing plant in Wichita. Cattle and hogs were slaughtered in his plant and the edible portions were sold as meat all within the state of Kansas. The hides, however, were sold to the Reed Hide Company of Wichita. This company sold them to a tannery in St.

Louis. We held under the above facts that the company was engaged in interstate commerce and that the Fair Labor Standards Act of 1938, 29 U. S. C. A. §§ 201 to 219, applied.

There is no denial but that by the various steps taken prior to the filing of this action that Ohse was engaged in interstate commerce— hence the provisions of the federal act apply. We are aided somewhat in the decision of the case by the fact that counsel for the Ohse Company in their notice of hearing on their motion to extend the restraining order stated the reason they asked for the extension was the petition had been filed with the National Labor Relations Board requesting the board to take jurisdiction of their plant in connection with their labor relations. Furthermore, when the notice was given it would on July 21 ask for another extension. The notice stated a petition had been filed by the plaintiffs with the National Labor Relations Board requesting the board to take jurisdiction for the determination of the question of representation and that a petition had been filed with the board by the defendant Union requesting the board to take jurisdiction of the matters related in the petition.

Furthermore, all parties, including Ohse, were advised by the board that a hearing would be conducted on June 17, 1955, at the post office in Topeka, Kansas.

The act provides, 29 U. S. C. A. Sec. 52, that no restraining order shall be granted by any court of the United States in any case between an employer and employee growing out of disputes concerning the conditions or employment unless necessary to prevent irreparable injury to property or property rights.

Section 101 of act provides that no court of the United States shall have jurisdiction to issue any restraining order in a case growing out of or involving a labor dispute except in strict conformity with the provisions of certain sections. The act further provides what shall be considered a labor dispute and that the Labor Relations Board shall have power to determine in the first instance whether peaceful picketing of the area is the board's jurisdiction. It provides further what picketing is unlawful. It vests in private parties affected by such picketing the right to file charges with the board, thereby invoking the board's power to determine whether the picketing is lawful. And provides when such charges are filed the board is empowered to investigate and if it finds the picketing illegal, to apply to an appropriate federal district court for restraining order.

During the years that have elapsed since the first enactment of the Norris-LaGuardia Act of 1932 there has been a great deal of litigation involving a construction of the act and the application of it to particular situations. The field is new. The project of a national body to administer the labor laws generally has resulted in attempts by the courts in many of the states to interpret the act according to their common law or their labor legislation.

Just to name a few, the Supreme Court of the United States has been compelled to review actions of state trial judges in Florida, Wisconsin, Pennsylvania, Alabama and New York. We have two cases pending in this court at this time besides this one where a district judge of Kansas has allowed a restraining order to prevent a Union from picketing the premises of an employer. The whole subject is very much alive. Two opinions of the United States Supreme Court bearing on the question with which we are dealing have been handed down within the last few months. In order to examine the full weight to be given those opinions it will be necessary to refer briefly to the opinions of the state courts from which the appeals were taken.

The first one with which we shall deal is *Garner v. Teamsters Union,* 346 U. S. 485. That was an appeal from the judgment of the Supreme Court of Pennsylvania. (See *Garner v. Teamsters, C. & H. Loc. Union 776,* 373 Pa. 19, 94 A. 2d 893.) There the plaintiffs Garner and Garner were engaged in the trucking and storage business. They employed about twenty-four persons as truckers and four of them belonged to the Union. There was no objection on the part of the employers to their employees belonging to the Union. However, two pickets were placed at the entrance of their loading platform, with the result that their business fell off about ninety-five percent. The employers brought a bill in equity against the Union to enjoin the picketing and the lower Pennsylvania court allowed such a preliminary injunction and later a permanent injunction. On appeal, the Supreme Court of Pennsylvania held that the state court had no jurisdiction to allow such an injunction and the court said:

"It is our opinion, therefore, that, since the plaintiff employers in the present case were engaged in interstate commerce, and the charge made by them was that the defendant Union was engaged in an activity which was unlawful under the law of the State but which also constituted an unfair labor practice under the provisions of the Labor Management Relations Act, and since that act provides an adequate and complete administrative remedy to prevent the continu-

ance of such activity if the charge be substantiated, the Court of Common Pleas of Dauphin County had no jurisdiction to issue an injunction in this case against the defendant. Plaintiffs' remedy must be sought by them in proceedings before the National Labor Relations Board, where an injunctive remedy, as previously pointed out, is available."

On appeal the United States Supreme Court set out the facts about as the Supreme Court of Pennsylvania had stated them and said:

"The national Labor Management Relations Act, as we have before pointed out, leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible."

The court further pointed out that it was not an instance of picketing, threatening of employees and so forth. The court pointed out there was no breach of the state's peace. The court then said:

"Congress has taken in hand this particular type of controversy where it affects interstate commerce. . . ."

Also note:

"It is not necessary or appropriate for us to surmize how the National Labor Relations Board might have decided this controversy had petitioners presented it to that body. The power and duty of primary decision lies with the Board, not with us. But it is clear that the Board was vested with power to entertain petitioners' grievance, to issue its own complaint against respondents and, pending final hearing, to seek from the United States District Court an injunction to prevent irreparable injury to petitioners while their case was being considered. The question then is whether the State, through its courts, may adjudge the same controversy and extend its own form of relief."

The court further stated:

"The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal Board, precludes state courts from doing so."

The court then pointed out that the petitioners argued that the Labor Relations Board enforced only a public right on behalf of the public interest, while state equity powers were invoked in the action by a private party to protect a private right. The court discussed the distinction between private rights and public rights. The court finally stated:

"We conclude that when federal power constitutionally is exerted for the protection of public or private interests, or both, it becomes the supreme law of the land and cannot be curtailed, circumvented or extended by a state procedure merely because it will apply some doctrine of private right. To the extent that the private right may conflict with the public one, the former is superseded."

Also note:

> "On the basis of the allegations, the petitioners could have presented this grievance to the National Labor Relations Board. The respondents were subject to being summoned before that body to justify their conduct. We think the grievance was not subject to litigation in the tribunals of the State."

In the same volume with the Garner case, just discussed, is a memorandum opinion, *Building Trades Council et al. v. Kinard Construction Co.*, 346 U. S. 933. This was an appeal from a case by the Supreme Court of Alabama. (See *Kinard Const. Co. v. Building Trades Council*, 258 Ala. 500, 64 So. 2d 400.) The Supreme Court of the United States in the memorandum opinion reversed the Supreme Court of Alabama on ·the authority of the .Garner opinion and said:

> "Since there has been no clear showing that respondent has applied to the National Labor Relations Board for appropriate relief, or that it would be futile to do so, the Court does not pass upon the question suggested by the opinion below of whether the state court could grant its own relief should the Board decline to exercise its jurisdiction."

To appreciate the above, we must consider what the Supreme Court of Alabama held. The Building Trades Council was picketing the Kinard Construction Company project in an effort to coerce it into forcing its employees to be, or to become, members of the Union. The court remarked that to join a labor Union the laborers would be required to pay a large initiation fee and regular dues, which they did not desire to do, and the Union's purpose was to cause the construction company to require them to do so. The court stated this was a violation of 158 (b) (1) (A) or 158 (a) (1) of the Labor Management Relations Act, and picketing was a form of coercion. The court held the employer was entitled to an injunction and said:

> "Our conclusion is grounded on the finding that the picketing labor organizations have committed an unfair labor practice under the National Labor Relations Act, as amended, and on the holding that a court of equity of this state has jurisdiction to enjoin such practice."

The Supreme Court of Alabama stated in its opinion in the Kinard case it was following its holding in the case of *Montgomery Building & Const. T. C. v. Ledbetter Erec. Co.*, 256 Ala. 678, 57 So. 2d 112. In the Ledbetter case the court on a rehearing said:

> "The only question we have in this case is whether the State court has jurisdiction when special circumstances of irreparable injury are alleged and not controverted, augmented by the necessary time of the board in making the preliminary investigation, and subject to a possibility that that board will

not take jurisdiction on account of the small amount of influence the transaction has on the flow of interstate commerce. This being in the discretion of the board, it was not necessary for complainant to take that risk in a situation which was then holding up construction and causing irreparable damage."

Hence there was a clear-cut holding in that case, which was followed by the Kinard case in Alabama that the employer could do precisely what Ohse's counsel in this case said they were doing, that is, obtaining a restraining order and an injunction against picketing while the Labor Relations Board was acting or getting ready to act in order to avoid irreparable damage. Such is the holding which the Supreme Court of the United States reversed in a memorandum opinion referred to above. The Ledbetter case was again before the Supreme Court of Alabama, 70 So. 2d 809. That was after the decision in the Garner case and the Kinard case in the United States Supreme Court. The Supreme Court of Alabama noted those two cases and stated they required reversal of what they had said in the Ledbetter and Kinard cases heretofore discussed. All this leaves no doubt at all as to what the Supreme Court would hold in such a case as the one we are deciding. It would hold the district court of Kansas had no jurisdiction to grant a restraining order or injunction under the facts and circumstances we have here. The last expression of the United States Supreme Court on this question is in *Weber v. Anheuser-Busch, Inc.*, 75 Sup. Ct. 480, handed down March 28, 1955. This was a review by writ of certiorari of an opinion of a state court. (See *Anheuser-Busch, Inc. v. Weber*, 364 Mo. 573, 265 S. W. 2d 325.) There the labor dispute was between two Unions, both of whom had been doing some work for the Anheuser-Busch Company. One of the Unions struck on account of the inability to agree over what was to be the terms of the contract. The Union picketed the plant of the Anheuser-Busch Company. The circuit court of Missouri granted an injunction holding that the evidence established a conspiracy between the unions to compel the brewing company to enter into a combination of trade in restraint of trade in violation of a Missouri statute. It was admitted there was no labor dispute between plaintiff and its employees and no unfair labor practice was involved. The court held, the employer was entitled to an injunction. The court said:

"The instant facts have presented to us, not a labor dispute or an unfair labor practice, but activities by and conduct of the Union which were coercive tactics restraining freedom of trade, an internal affair over which this State has 'traditionally exercised control.'"

And note

"For reasons above appearing, defendants' contention that the state circuit court was without jurisdiction to grant the injunction must be denied. And upon the facts before it, we must rule that the circuit court properly issued the instant injunction. Its action in so ordering the injunction to issue is affirmed."

The Supreme Court of the United States granted a writ of certiorari. Its opinion appears on page 480 of 75 Supreme Court Reporter. After reciting the facts, about which there does not appear to be any doubt, the Supreme Court said:

"The principal question that the case raises, whether the state court had jurisdiction to enjoin the IAM's conduct or whether its jurisdiction had been preempted by the authority vested in the National Labor Relations Board, has an importance in the federal-state relations regarding industrial controversies that led us to grant certiorari."

The court pointed out numerous occasions where it had been compelled to pass upon what is called "this delicate problem of the interplay between state and federal jurisdiction touching labor relations." See *Hill v. State of Florida ex rel. Watson*, 325 U. S. 538, 65 S. Ct. 1373, 89 L. Ed. 1782. There the injunction was invalidated on the ground that the Wagner Act included federally established right to collective bargaining. See, also, *Amalgamated Association of St. Elec. Ry. & Motor Coach Emp. of America v. Wisconsin Employment Relations Board*, 340 U. S. 383, 71 S. Ct. 359, 95 L. Ed. 364.

The court then referred to and quoted from the Garner case. Then it set out and cited the following cases: *Plankinton Packing Co. v. Wisconsin Employment Relations Board*, 338 U. S. 953, 70 S. Ct. 491; *Building Trades Council v. Kinard Construction Co.*, 346 U. S. 933, 74 S. Ct. 373, 98 L. Ed. 423; and *Capital Service, Inc. v. Labor Board*, 347 U. S. 501, 74 S. Ct. 699, 98 L. Ed. 887. The court then pointed out a number of cases where the Supreme Court had overturned the holding of the state court in certification cases. (See *LaCrosse Telephone Corp. v. Wisconsin Employment Relations Board*, 336 U. S. 18, 69 S. Ct. 379, 93 L. Ed. 463, and *Bethlehem Steel Co. v. New York State Labor Relations Board*, 330 U. S. 767, 67 S. Ct. 1026, 91 L. Ed. 1234.) The court then cited a number of cases where the United States Supreme Court held the state court could allow an injunction against picketing but they were cases where there had been some unusual feature in picketing, like violence or strikes being called at odd hours or an

action for damages based on violent conduct. The court in discussing the Weber case pointed out that this was not a case of unfair labor practices and said:

"Respondent itself alleged that the Union conduct it was seeking to stop came within the prohibitions of the federal Act, and yet it disregarded the Board and obtained relief from a state court. It is perfectly clear that had respondent gone first to a federal court instead of the state court, the federal court would have declined jurisdiction, at least as to the unfair labor practices, on the ground that exclusive primary jurisdiction was in the Board. As pointed out in the Garner case, 346 U. S., at page 491, 74 S. Ct. 161, the same considerations apply to the state courts."

The court also said:

"We realize that it is not easy for a state court to decide, merely on the basis of a complaint and answer, whether the subject matter is the concern exclusively of the federal Board and withdrawn from the State. This is particularly true in a case like this where the rulings of the Board are not wholly consistent on the meaning of the sections outlawing 'unfair labor practices', and where the area of free 'concerted activities' has not been clearly bounded. But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the Federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance."

This entire question has received so much attention from congress and the courts during the last twenty years, the legislative history of the various bills since the enactment of the Norris-La Guardia Act is persuasive when considering the intent of congress.

The Taft-Hartley Act is the latest expression of congress. It does no violence to history to state it was hailed in some quarters as a radical amendment and departure from the original Norris-La Guardia and Wagner Acts. As it passed the House on April 17, 1947, Section 12 (a) (2) of House Resolution 3020 prohibited:

"Picketing an employer's premises for the purpose of leading persons to believe that there exists a labor dispute involving such employer, in any case in which the employees are not involved in a labor dispute with their employer."

Section 12 (a) (3) (C) also prohibited:

"any strike or other concerted interference with an employer's operations, an object of which is (i) to compel an employer to recognize for collective bargaining a representative not certified under section 9 as the representative of the employees, or (ii) to remedy practices for which an administrative remedy is available under this act. . . ."

Under the allegations of the Ohse petition the picketing would

have violated each of those provisions. Since the petition alleged there was no labor dispute between Ohse and the employees, the picketing would have violated Section 12 (a) (2). Since its purpose was to compel Ohse to recognize plaintiffs, who were not certified under Section 9, as the representative of its employees it would have violated Section 12 (a) (3) (c) (i). Since there was available to plaintiffs an administrative remedy for Ohse's refusal, that is, the filing of charges with the board, it would have violated Section 12 (a) (3) (c) (ii).

It is convincing that the senate amended the bill so that as it finally passed the senate neither of the above provisions was in it. In the conference committee they were both omitted, so as the bill was finally enacted into law neither of them was in it, nor was there any provision of similar import.

Other matter from the Congressional Record, which will not be included in this opinion, may be found at 93 Cong. Rec. 4840; 2 Leg. Hist., L. M. R. A., 1359-1360, speech of Senator Morse on this point. See, also *Report of Joint Committee on Labor-Management Relations*, 80th *Congress*, 2nd *Sess.*, *Report* No. 986, *Part* 3, pp. 70, 71.

These reasons are persuasive here since the Union has charged before the National Labor Relations Board that Ohse's acts of intimidation and discrimination make a fair election impossible, and where the board has refused to proceed on Ohse's representative petition until it has disposed of the merits of plaintiffs' charges.

While the Taft-Hartley Act was being considered there was an effort to provide that in cases where strikes or picketing violated the provisions of Section 8 (b) (4) of the bill, private employers affected should be given the right to resort to the federal courts for injunction to avoid irreparable injury. (See 93 *Cong. Rec.* 4834-4838; *Sen. Rep.* No. 105, 80th *Congress*, 1st *Sess.*, pp. 54, 56.) It was argued that as the law stood an employer subject to such illegal strikes or picketing could obtain relief only by resorting to the board; that this procedure was necessarily slow and time consuming and the employer might suffer irreparable injury during the interim period from the inception of the picketing until the board could investigate the employer's charge and obtain an injunction or restraining order. (See 93 *Cong. Rec.* 4834, 4847, 4132 and 4133; *Sen. Rep.* No. 105, 80th *Cong.*, 1st *Sess.*)

We do not have the benefit of a brief on the part of the defendants but from the colloquy between court and counsel at the time

of the hearing on the motion to extend the restraining order, it is a reasonable inference the order was granted in the first place and later extended on the theory that it was necessary as a practical matter to preserve the *status quo* and prevent irreparable damage and injury to the employer. That theory was considered by the United States Supreme Court and rejected in the Garner opinion.

The only remedy for an employer under facts and circumstances such as we have here is to resort to the National Labor Relations Board. The cited opinions of the Supreme Court of the United States as well as the legislative history require a holding by us that no state court under circumstances such as we have here has a right to issue a restraining order or injunction against picketing. The defendants in this case had a clear duty to refuse to extend the restraining order already issued and a clear duty to dissolve it once it was issued and extended. Since, however, on June 30 we made an order directing the defendants immediately to dissolve the restraining order in question, no peremptory writ will actually issue.

The plaintiffs ask for costs, including attorney fees. We have the power to allow a reasonable attorney fee in mandamus actions. The statute does not make it mandatory, however. In this case where there was some doubt as to the duty of the defendants in the first instance we do not feel inclined and will not assess an attorney fee against them.

HARVEY, C. J.: I concur in part and dissent in part. I agree in that the restraining order was improvidently issued and extended but I dissent from considering the case against the judges. They are not litigants. Defendants in the Ohse case could have filed a demurrer to the petition which could have been heard upon a 3-day notice. If ruled upon adversely they could have appealed and applied in this court for advancement which would have been granted if the court thought the showing sufficient. They filed no demurrer. Their counsel became aggrieved at Judge Heinz, and really insulting to him, for continuing the restraining order for reasons normally regarded as appropriate, and came to this court with a mandamus action. Mandamus is not a substitute for appeal. I think this case should be dismissed and let them proceed in a normal manner, under our Code of Procedure.